**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Silvio R. DIAZ–MUNOZ, Alfredo Garcia
and Eduardo Garcia,
Defendants–Appellants.**

No. 79–5689.

United States Court of Appeals,
Fifth Circuit.
Unit B

Dec. 19, 1980.

Harvey D. Rogers, Miami, Fla., for Diaz–Munoz.

Lyons & Farrar, Marsha L. Lyons, Miami, Fla., for Alfredo Garcia.

Jose E. Martinez, Miami, Fla., for Eduardo Garcia.

Carolyn L. Gaines, Atty., Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff–appellee.

Before JONES, FAY and HENDERSON, Circuit Judges.

FAY, Circuit Judge:

In this criminal appeal appellants seek reversal of convictions on nineteen counts. Appellant Diaz–Munoz was found guilty on counts one through four: conspiracy to defraud an insurance company through the mails in violation of 18 U.S.C. § 371 (1976) and causing documents containing a fraudulent claim for money to be mailed for the purpose of defrauding an insurance company in violation of 18 U.S.C. §§ 1341, 1342 (1976). Appellant Alfredo Garcia was found guilty of the above four counts and four additional counts of causing the false filing of tax returns on behalf of himself and a corporation in violation of 26 U.S.C. § 7206(1), (2) (1976). Appellant Eduardo Garcia was convicted on the four insurance counts and three counts involving embezzlement with mail fraud in violation of 18 U.S.C. § 1341 (1976) and preparing false documentation in violation of 49 U.S.C. § 121 (1976) and 18 U.S.C. § 2 (1976). In addition, Eduardo Garcia was found guilty of embezzlement from a common carrier in violation of 18 U.S.C. § 660 (1976), two counts of advising the preparation of false tax returns in violation of 26 U.S.C. § 7206(2) (1976), and three counts of causing the filing of false tax returns on behalf of himself in violation of 26 U.S.C. § 7206(1) (1976). We set aside the judgment of the trial court and remand for new trials, reversing the trial court's handling of *Brady* materials.

## FACTS

*Insurance Fraud*

During 1973, Ocean Trailer Transport (O.T.T.), a subsidiary of Reynolds Metals, operated the M/V SIBONEY, a vessel carrying cargo between San Juan, Puerto Rico and Miami. Appellant Eduardo Garcia was general manager of O.T.T. in Miami, and appellant Alfredo Garcia handled operations in San Juan.

On her voyage beginning August 11, 1973, the M/V SIBONEY encountered difficulty and four containers owned by Meteoro Express Company were lost overboard. Appellant Silvio Diaz–Munoz, an officer of Meteoro, filed a claim on behalf of Meteoro against O.T.T. and its insurance carrier, Insurance Company of North America (INA).

Meteoro claimed that various merchandise had been packed in the lost containers along with the primary cargo of steel wire. Meteoro's claims and documentation on behalf of various merchants were received and eventually paid by INA. The government claimed that the lost containers held only steel wire. The merchants involved were unable to testify conclusively whether their merchandise was or was not in the containers.

Persons handling the loading of the containers testified that at one time Meteoro

and Puerto Rican Freight Company had an agreement whereby operations were combined for the convenience of the two companies. Pursuant to this agreement, both companies would ship goods in the same container if the container was not fully packed by either. Diaz–Munoz' position was that this procedure was followed with the M/V SIBONEY. Roberto Faith of Puerto Rican Freight testified that the containers were sealed on his lot and sent to the docks. Ruben Fuentes, who was in charge of documentation at Meteoro, testified that the containers were always brought back to Meteoro where packing was completed and seals affixed.

Insurance adjusters and personnel testified that they dealt with appellant Eduardo Garcia and Pete Sosa, general traffic and sales manager of O.T.T., in handling the claim. Sosa provided the only direct testimony concerning the fraud. He testified that the insurance claims came about through a series of conversations between himself, Silvio Diaz–Munoz, Eduardo Garcia and Alfredo Garcia and that he, Sosa, had helped Julio Hernandez and Silvio Diaz–Munoz prepare false documents with the knowledge of Eduardo Garcia.[1] Diaz–Munoz, Fuentes and Hernandez denied preparing false documents. Eduardo Garcia denied having any discussions with anyone or having anything to do with preparation of the claims documents.

### Scheme Against Reynolds Metals

This scheme involved three shipments of pipe to the Dominican Republic in 1974. The shipper, D.A.F., was required to pay $1.00 per cubic foot. On the first two shipments, this amount was forwarded to Reynolds Metals, but certain "commissions" were paid to a freight forwarder (Alas Cargo Services) and eventually found their way back to O.T.T. According to Pete Sosa, he

and Eduardo Garcia agreed to charge the shipper $1.00 a cubic foot for the third voyage but to prepare documents that would indicate that the charge was only $.40 a foot. Pete Sosa described in detail his preparation of the false documents and alleged that he did so with the approval of Eduardo Garcia and the knowledge of Alfredo Garcia. O.T.T. was paid $88,000 for the shipments. Augustin Serralta of Alas Cargo Services testified that he deposited the $88,000 in the Alas account, and on the instructions of Eduardo Garcia, made one check for O.T.T., one for Caribbean Cargo, and kept the remainder as expenses for preparation of the papers.

Eduardo Garcia testified that he had discussed with his immediate supervisor at Reynolds the possibility of getting sufficient income from this third voyage to defray expenses of the voyage and to provide severance pay for O.T.T. employees as this was to be the SIBONEY's last voyage. Garcia's position was that because he had authority as general manager of O.T.T. to do what he had done, and because there was full disclosure to his superiors at Reynolds, there was no embezzlement.

The charges in the embezzlement counts against Alfredo Garcia were dropped at the end of the government's case but not before the evidence had been presented to the jury.

### Income Tax Counts

The substance of counts ten and eleven was that Eduardo Garcia approached Francisco Vidal and asked if Vidal would accept certain money due Eduardo Garcia. Garcia arranged for certain checks to be delivered to Vidal for his own use and that money was then reported on Vidal's returns.

Rose Vidal, Eduardo Garcia's wife and the mother of Francisco Vidal, testified

---

1. Julio Hernandez was originally named in the indictment. On cross–examination by the government he testified that he had personally seen the lost containers being loaded. In attempting to impeach this testimony, the prosecutor elicited testimony regarding a conference during which Mr. Hernandez agreed to plead guilty and testify on behalf of the prosecution. The question suggested that Diaz–Munoz and his attorney were also at the conference. Defendants' motions for mistrial were denied and curative instructions given.

that checks were received by her for use for general household expenses in the house in which Francisco, Eduardo, Rosa and others lived. As far as she knew she paid taxes on all the money she received. She identified $20,000 in checks from Caribbean Cargo and said she had repaid that money.

In establishing its case against Eduardo and Alfredo Garcia the government relied on the disbursement method of proof. Seeking to establish that the Garcias exercised control over money that was unreported as income, the government alleged that the accounts of Caribbean Cargo, a Panamanian corporation, were used to launder money. The appellants argued that any disbursements out of Caribbean Cargo. were, in fact, loans. They argued that the Caribbean Cargo accounts contained funds originally deposited by the C.I.A. for use in anti–Castro activities.

Count fifteen, an individual tax fraud count against Eduardo Garcia, was dismissed when it was discovered that the government failed to support it with proof.

The government abandoned its claims as to part of the monies questioned in counts sixteen and seventeen against Alfredo Garcia when it learned, after the grand jury indictment, that some of the funds in question had been reported on Alfredo Garcia's tax returns in Puerto Rico. The government again sought to prove that monies deposited into Caribbean Cargo accounts had been disbursed by this defendant.

In the final two counts charging Alfredo Garcia with causing income of Intermodal Cargo Services to be underreported, the government again tried to show that income of Intermodal had been deposited into Caribbean Cargo accounts. Alfredo Garcia testified that the monies questioned were repayment to Caribbean Cargo of loans previously made to Intermodal.

## BRADY VIOLATIONS

Throughout this trial the government sought to prove that money obtained by fraud was deposited into accounts over which appellants Alfredo and Eduardo Garcia had control. According to the government, the primary vehicle for laundering this money was the account of Caribbean Cargo, a Panamanian corporation. Alfredo had signature power over accounts of that company. Alfredo and Eduardo Garcia contended that these accounts were set up to fund anti–Castro activities and that monies from the C.I.A. had been deposited into the accounts. Loans from the accounts were made from time to time to members of the Garcia family and such moneys were always to be paid back. Neither appellant regarded the money as his own.

Prior to trial a specific request was made that the government search records of the C.I.A., F.B.I. and military intelligence organizations for materials relating to anti–Castro activities of the appellants. In the motion, Alfredo Garcia argued that if such information were in the hands of any government agency, the information would have a direct and immediate bearing on whether funds going into and out of Caribbean Cargo accounts were monies Alfredo Garcia was required to report to the Internal Revenue Service.

The record indicates that the prosecutor did go to Washington, D.C. to review a C.I.A. file but was given only excerpts from the file. On the first day of trial, counsel for Alfredo Garcia asserted that because the prosecutor had not personally seen the file, no officer of the District Court for the Southern District of Florida could represent that the file contained no exculpatory material. The government argued that because it could trace specific monies, the presence in the account of monies from other sources, including the C.I.A., was irrelevant. The trial court accepted this representation, specifically allowing the appellants to raise the point later if necessary.

During trial, the court announced in chambers that it had received an affidavit from assistant counsel for the Central Intelligence Agency. The Court, not caring to

be responsible for the affidavit, turned it over to the local offices of the C.I.A., stating that the affidavit would be there if needed for appellate purposes. According to the Court, the affidavit spoke of payment of money to the Garcia family for the loss of ships used in the Bay of Pigs Invasion and to survivors of the invasion. The affidavit also established that as late as 1972 one of the Garcias had contacted the C.I.A. The Court could not remember which one.

We conclude that the trial court erred in its handling of the C.I.A. materials, and we remand for findings and conclusions on whether the file itself contains exculpatory material. We specifically hold that if the C.I.A. does not make the file available for *in camera* inspection, all charges related to the Caribbean Cargo accounts must be dismissed.[2]

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused violates due process when the evidence is material to either guilt or punishment. That evidence which is material is evidence which creates a reasonable doubt of guilt that did not otherwise exist. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1970); *United States v. Crockett*, 534 F.2d 589, 601 (5th Cir. 1976).

█ We have held that reliance on the government's assurance that it is not in possession of any *Brady* material may be sufficient when the defense makes a blanket request for favorable material in the government files. *United States v. Gonzalez*, 466 F.2d 1286 (5th Cir. 1972); *United States v. Gaston*, 608 F.2d 607 (1979).

Here, however, we are not faced with a blanket request as in *Gonzalez* nor was there an evidentiary hearing where one with knowledge of the file could be cross–examined as in *United States v. Franicevich*, 471 F.2d 427 (5th Cir. 1977). The C.I.A. materials were sought for substantive use as going directly to the defense in the income tax counts as well as the fraud counts. The government, having set about to prove in every count that money came into or out of Caribbean Cargo, was obligated to release information tending to corroborate appellants' argument that money in that account was not theirs. It is simply not enough for the government to confirm C.I.A. payments but refuse all information as to dates and amounts, and then say it makes no difference.

Under these circumstances, it was error for the trial court to fail to undertake an examination of the file *in camera*. See *United States v. Gaston*, 608 F.2d 607, 613 (1979); *Williams v. Dutton*, 400 F.2d 797, 800 (5th Cir. 1968), *cert. denied*, 393 U.S. 1105, 89 S.Ct. 908, 21 L.Ed.2d 799 (1969).

We have said that this court cannot decide cases in a vacuum nor pass on facts that are not in the record. *United States v. Brown*, 574 F.2d 1274, 1278 (5th Cir.), *cert. denied*, 439 U.S. 1046, 99 S.Ct. 720, 58 L.Ed.2d 704 (1978). It is the responsibility of the trial court and the parties to present a complete record on appeal, and it is not the duty of this court to seek affidavits from government agencies. As we said in *Gaston, supra*:

> We note that this conviction might not have been subject to attack on *Brady* grounds and that the entire exercise which we have here undertaken could have been obviated had the district court

---

2. We note that during the week that this case was argued, the President signed S.1482, the Classified Information Procedures Act which provides for pretrial, trial and appellate procedures to be followed in criminal cases involving classified information. Section 6(e)(2)(A–C) of that act provides that when a defendant is prevented under the procedures of the Act

from disclosing or causing disclosure of classified information, the court shall dismiss the indictment unless it determines that such dismissal would not be in the interest of justice. In lieu of dismissing the indictment the court may dismiss specific counts or find against the United States on the issue.

taken time to examine [the *Brady* materials] *in camera.* at 614.

## MISJOINDER

■ Appellant Eduardo Garcia first raised the question of misjoinder in a motion under Fed.R. of Crim.P. 8(b).[3] In his pretrial motion he argued for severance of counts ten through fifteen.[4] Counts ten and eleven allege that Garcia assisted in the preparation of false returns on behalf of Francisco Vidal, and counts twelve through fifteen allege that Garcia misrepresented his own income. It was appellant Eduardo Garcia's position that neither of these tax situations had anything to do with the insurance fraud alleged in the first four counts or with the Reynolds Metals embezzlement. In response, the government represented to the court:

> The proof at trial will show the allegations of the subject counts to be part of a series of transactions which began with acts of fraud and were concluded when the fraudulent income was not reported as income to the Internal Revenue Service.

(R. I, 167). Accepting the representation that the counts would be tied together, the court denied the motion for severance.

Appellant Alfredo Garcia then raised the question of improper joinder by means of a motion for severance of trials under Fed.R. Crim.P. 14,[5] alleging prejudice in the fact that if the defendants were tried separately, Eduardo Garcia would testify that Alfredo Garcia had no involvement with the submission of false claims to I.N.A. or of false documents to Reynolds.[6]

Alfredo Garcia also alleged improper joinder of counts under Fed.R.Crim.P. 8(a). His position was that the government had taken several distinguishable offenses and charged them all together because of the same defendants' alleged participation in each of the offenses. Again, the government's response was that it would show that monies obtained by fraud were unreported on tax returns.

We find that there was misjoinder as to both counts and defendants in this action as a matter of law and that the government's representation that the defendants and

---

**3.** Rule 8 provides:

JOINDER OF OFFENSES AND OF DEFENDANTS

(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

(b) Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

**4.** Actually, this motion would better have been brought under rule 8(a) since it questioned joinder of disconnected counts against a single defendant. Because there has been misapplication of rule 8 in multiple defendant cases, we

do not feel that failure to move for severance under the proper section is fatal on appeal. See *United States v. Marionneaux,* 514 F.2d 1244, 1249 (5th Cir. 1975); *see generally* 8 *Moore's Federal Practice* § 8.06 (2d ed. 1975).

**5.** Rule 14 provides:

RELIEF FROM PREJUDICIAL JOINDER

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

**6.** We do not decide whether prejudice may have inured to Alfredo Garcia in counts five through nine because his motion for acquittal on these counts was granted.

counts would be tied together led the trial judge to his erroneous holding that the requirements of Fed.R.Crim.P. 8(a) and (b) were satisfied. In alleging that these counts and defendants were connected, the government assumed the risk that its proof would fail, and it conceded this failure on oral argument. The record reflects clearly that the misjoinder was inherently prejudicial to the defendants.

*Joinder of Offenses–Rule 8(a).*

■ Treating Eduardo Garcia's motion for severance as a motion under 8(a), we must question whether offenses against a single defendant are (1) offenses of the same of similar character or are (2) based on the same act or transaction, two or more acts or transactions connected together or two or more acts or transactions constituting parts of a common scheme or plan. There is possible commonality between the insurance fraud and the Reynolds Metals embezzlement in that both involved M/V SIBONEY and the parent company Reynolds. The tax counts, however, are not based upon similar acts and are not connected to the other two schemes. It became clear during trial that the income tax counts were insufficiently linked to the fraud and embezzlement counts. At this point the court invited counsel for Eduardo and Alfredo Garcia to exercise their right of severance. Both counsel declined to do so. We expect, however, that upon retrial these counts will be severed from the fraud and embezzlement counts. Since joinder was improper under 8(a) originally, we are not required to question the discretion of the court under rule 14. *See United States v. Perez,* 489 F.2d 51, 64, 65 (5th Cir. 1973), *cert. denied,* 417 U.S. 945, 94 S.Ct. 3067, 411 L.Ed.2d 664 (1974).

*Joinder of Defendants–Rule 8(b)*

To be joined as defendants in the same indictment, Fed.R.Crim.P. 8(b) requires that the defendants must be alleged to have participated (1) in the same act or transaction or (2) in the same series of acts or transactions constituting an offense or offenses.

■ Counts one through four and counts five through nine allege two separate transactions. Admittedly, there is similarity in the participation of Eduardo Garcia and the testimony of Pete Sosa, but the two schemes are different as the government admitted on oral argument. Under rule 8(b) a "series" is something more than "similar" acts. *United States v. Marionneaux,* 514 F.2d 1244, 1248 (5th Cir. 1975). Because the government failed to prove the facts that linked them together, the participation of Eduardo Garcia in the second scheme should not be used against Silvio Diaz–Munoz in the first. The point was made by Justice Douglas in his dissenting opinion in *Schaffer v. United States,* 362 U.S. 511, 523, 80 S.Ct. 945, 952, 4 L.Ed.2d 921 (1959):

> Reasons for severance are founded on the principle that evidence against one person may not be used against a codefendant whose crime is unrelated to the others. Instructions can be given the jury and admonitions can be made explicit that the line between the various defendants must be kept separate. The district judge conscientiously made that effort here. But where, as here, there is no nexus between the several crimes, the mounting proof of the guilt of one is likely to affect another. There is no sure way to protect against it except by separate trials, especially where, as here, the several defendants, though unconnected, commit the crimes charged by dealing with one person, one house, one establishment.

*Prejudice Under Rule 14*

■ Alfredo Garcia alleged in his motion for separate trials under rule 14 that Eduardo Garcia would testify in his favor. Although we might not question the discretion of the trial judge in denying this motion if joinder had been proper initially, here, where initial joinder was erroneous

we must say the motion should have been granted.

 Additionally, each appellant has alleged that his conviction rested upon an unlawful cumulation of evidence. While we do not think cumulation alone is enough to establish prejudice, it is obvious that in this case the misjoinder caused serious problems and substantial confusion at trial. The trial lasted more than two weeks and involved three defendants, nineteen counts, and over two–hundred exhibits. The jury returned its verdicts of guilty in less than three hours, including lunch. In this circuit, we have considered the test for prejudice to be as follows:

> Whether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him?

*Tillman v. United States*, 406 F.2d 930, 935 (5th Cir. 1969), *vacated in part*, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742, *citing Peterson v. United States*, 344 F.2d 419, 422 (5th Cir. 1965). Because of the complexity of the case, and the misjoinder of offenses and defendants, we do not think the jury was able to evaluate the position of each defendant separately.

### UNFAIR TRIAL CLAIMS

Because we reverse on the basis of the joinder and *Brady* problems, we do not reach appellants' contentions that the prosecution's inadvertent mistake in eliciting testimony of a guilty plea deprived the appellants of a fair trial.[7]

 We find that the contentions of Diaz–Munoz that evidence was insufficient to convict him of insurance fraud and of Alfredo Garcia that evidence was insuffi-

cient to convict him of tax charges are without merit. Viewing the evidence in the light most favorable to the government, *see Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), there was more than slight evidence adduced on the counts questioned.

The unfairness of this trial appears more to be a failure of organization caused by the misjoinders than a failure of proof. In making its decision to combine defendants and counts, the government must balance the needs of the court against its own needs and those of the defendants. That many witnesses spoke little English, that the exhibits were so numerous that it was unclear what was and was not in evidence,[8] and that there was variance between the particulars and the proof at trial are all indicia that the government weighed its own needs too heavily. Multi–defendant, multi–count indictments are difficult for all concerned. In attempting to handle these numerous problems, the experienced trial judge relied upon the representations of the government. Unfortunately, these seem to have been based more on hope than on fact.

REVERSED and REMANDED.

---

7. *See* note 1, *supra*.

8. The attorney for the government inadvertently included in his final argument a document that had not been moved into evidence.