**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Renee STEWART, Defendant-Appellant.**

**No. 86–5255.**

United States Court of Appeals,
Eleventh Circuit.

June 29, 1987.

Geoffrey C. Fleck, Friend & Fleck, South Miami, Fla., for Stewart.

Leon B. Kellner, U.S. Atty., Lee Stapleton, Asst. U.S. Atty., Miami, Fla., for U.S.

Before TJOFLAT and EDMONDSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Renee Stewart was convicted on three separate counts of illegal possession of a firearm, 26 U.S.C. sec. 5861(d), and one count of illegal transfer of a firearm, 26 U.S.C. sec. 5861(e). Specifically, Stewart was convicted of (1) possessing an unregis- tered M–67 fragmentation grenade, (2) pos- sessing an unregistered Reising machine gun, (3) possessing component parts of an unregistered destructive device (i.e., explo- sives, blasting caps, safety fuse and mili- tary fuse ignitors), and (4) illegally trans- ferring the M–67 grenade. We affirm.

On May 8, 1985, George Zepatis, a government informant, and Rusty Ansell drove to defendant's residence to inspect certain firearms. Another purpose of the visit was for Zepatis to obtain a receipt for a jeep which defendant's deceased father had sold to Zepatis, so that Zepatis could in turn sell the jeep to Ansell. Ansell waited in the car while Zepatis went inside.

Defendant took Zepatis to her bedroom. There she showed him a briefcase contain- ing two machine guns, two pistols and four silencers. She also showed him a M–67 grenade. Zepatis saw additional grenades on appellant's dresser and in wooden crates on the floor.

Zepatis went out to the car and brought Ansell back inside the house with him. De- fendant told Ansell that she had guns for sale and showed him a canister, telling Ansell that it had a grenade inside. De- fendant then wrote out a receipt for the jeep.

On May 10, 1985, Zepatis returned to defendant's residence and told her that he wanted a grenade. Defendant handed him a canister. Zepatis looked inside and con- firmed that the canister contained a gre- nade; defendant then wrapped the canister in a white skirt. Defendant also gave Zep- atis a handwritten "shopping list" describ- ing the prices of various weapons, includ- ing rockets, M–67 grenades, bazookas, M–16 rifles, C–4 and Flex-X explosives, and detonation caps.

Defendant told Zepatis that if he wanted any of the weapons on the shopping list, she could obtain them within two days. She said that the source of the weapons was Frank Mussoline, a Metro-Dade bomb squad officer. Frank Mussoline and other men were in defendant's home at the time of Zepatis' visit on May 10.

Later the same day special agents of the Bureau of Alcohol, Tobacco and Firearms executed a search warrant on defendant's

house. In a dresser in defendant's bedroom, the agents found a military ammunition can that contained Flex-X and C–4 military explosives. In her bedroom closet, the agents found three high explosive boosters in plain view, as well as a Reising .45 caliber machine gun and a M–67 fragmentation grenade. The agents also found in her closet three commercial safety fuses with attached blasting caps and three military fuse ignitors. A pair of Metro-Dade bomb squad coveralls were found in her closet. Furthermore, the agents found Frank Mussoline's name tag pinned to a heart in defendant's bedroom.

### I. Exclusion of Evidence.

On appeal, Stewart argues that the trial judge erred by systematically excluding evidence favorable to her defense. The effect of such exclusion of evidence, Stewart asserts, was to violate her constitutional rights to due process, compulsory process and confrontation of witnesses.

Specifically, Stewart contends that the trial judge erred by excluding evidence that her deceased father had worked as a secret agent for government agencies such as the Central Intelligence Agency, Bureau of Alcohol, Tobacco and Firearms, and Customs Service and that, in the course of his clandestine activities, her father had acquired the weapons that are the subject of this case. Such evidence, Stewart asserts, would have established the lawful source and original ownership of these weapons and established that she did not knowingly possess the weapons.

■ The exclusion of this evidence was not abuse of discretion, much less constitutional error. Evidence of such nature has no relevance to whether defendant illegally transferred the M–67 grenade. *See* 26 U.S.C. secs. 5861(e), 5812. The source and ownership of firearms is also immaterial in a prosecution pursuant to 28 U.S.C. sec. 5861(d) for illegal firearm possession. A person violates section 5681(d) by knowingly possessing an unregistered firearm. Knowledge of the unregistered status of the weapon is not required; the only knowledge required is that the instrument possessed is a firearm. *See United States v. Sorrells,* 714 F.2d 1522, 1531 (11th Cir.

1983); *United States v. Freed,* 401 U.S. 601, 608, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971).

Under the facts of the present case, the alleged covert activities of defendant's father bear no relevance to the question of whether defendant knowingly possessed the weapons. Defendant's father died eighteen months before defendant was arrested. The weapons involved were unregistered. The location of the weapons in defendant's dresser and closet as well as the weapons "shopping list"—which defendant concedes is partially in her own handwriting—clearly establish that defendant knowingly possessed the weapons subsequent to her father's death. Even if her father was a secret agent and lawfully acquired the weapons as part of his covert activities, these facts would provide no defense for Stewart on the firearm possession counts.

■ Stewart argues that the trial judge erred by excluding evidence that her mother killed her father and that her mother had been in a mental hospital. But evidence that defendant's mother killed defendant's father was in fact introduced during the trial. Evidence regarding her mother's hospitalization was irrelevant and properly excluded.

■ Also, Stewart asserts that the district court improperly excluded evidence regarding Dale Winters, an ATF agent. Winters participated in the search of defendant's residence and prepared an inventory of the items seized. This inventory, which originally listed only one grenade, was modified to show that there had been two grenades in defendant's house—one seized by the agents and one that Zepatis took from the house earlier on May 10. Subsequently, Agent Winters was indicted for attempting to murder his ex-wife by firebombing her house. The district court examined Winter's ATF file and excluded evidence of the Winter fire-bombing incident as irrelevant. The exclusion of such evidence appears proper; a grenade is not an incendiary device that would be used in a firebombing.

■ Stewart, who was nineteen at the time of her arrest, argues that the trial

judge improperly excluded evidence that her younger siblings also lived in the house. Furthermore, Stewart contends that the district court erred by excluding evidence regarding the allegedly chaotic conditions during the search of her residence. The exclusion of such evidence was no error. Even if it was error, such error was harmless because the evidence of defendant's guilt is overwhelming.[1]

## II. Alleged Partiality of the Trial Judge

Stewart contends that her due process rights were violated because the trial judge was not impartial. According to Stewart, the judge repeatedly acted in a hostile manner toward defense counsel and vituperatively interrogated defense witnesses.

■ We have examined the record and conclude that the judge acted with restraint and impartiality, despite exasperating conduct by defendant's two trial counsel.[2] Any vexation displayed by the judge was provoked by defense counsel. Also, the judge instructed the jury that the prosecution was against Renee Stewart and that the jury should not be affected in any way by the fact that the court may have demonstrated unhappiness toward a lawyer. The judge's conduct toward defense counsel was fair and certainly did not violate Stewart's due process rights.

■ So long as a trial judge remains neutral, he may actively question witnesses and comment on the evidence. *Moore v. United States*, 598 F.2d 439, 442–43 (5th Cir.1979). The judge's questioning of witnesses in the present case was sufficiently neutral. Furthermore, the questioning of which appellant complains occurred while the jury was excused; thus, even if the judge strayed from neutrality while questioning these witnesses, such error was harmless.[3]

## III. Government's Alleged *Brady* Violations

■ Stewart argues that the government repeatedly failed to disclose evidence favorable to her defense, thereby violating her due process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[4] To establish a *Brady* violation, appellant must show: (1) the prosecution suppressed evidence; (2) such evidence was favorable to the appellant or exculpatory; and (3) the evidence was material. *United States v. Bent-Santana*, 774 F.2d 1545, 1551 (11th Cir.1985). Evidence is "material" for *Brady* purposes "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985) (plurality); *see also id.* at 3385 (White, J., concurring).

■ Stewart alleges that the government failed fully to disclose the covert activities of her father. We assume, arguendo, that Stewart's allegations are true—i.e., that Stewart's father worked for years as a secret agent for various United States

1. Stewart argues that the exclusion of certain other evidence was erroneous. These arguments do not merit discussion.

2. Judge Mishler, the trial judge, admonished the two defense counsel outside the presence of the jury:

   In my almost 26 years on the federal bench I can't remember a single case in which a combination of [defense] lawyers has contemptuously refused to abide by the rulings of the Court and persistently and repeatedly asked improper questions, questions upon which the Court had clearly ruled.... I've had similar misconduct here and there over the period for 26 years, but here I had a combination. Two lawyers representing one defendant, attempting to bring in all kinds of irrelevant testimony, attempting to give the jury issues which

   were not in evidence in the case and confusing issues which were evidence in the case, a clear, planned effort, and I can call it nothing else.

   Our review of the record indicates that Judge Mishler's observations regarding defense counsels' conduct are accurate.

3. Stewart's arguments that the district court was hostile to the defense on other occasions do not merit discussion.

4. Defendant argues that the government repeatedly violated Fed.R.Crim.P. 16 and a local standing discovery order. We doubt that the government violated such rules at all. Furthermore, even if the government violated these discovery rules, the district court's failure to sanction the government by excluding evidence was not abuse of discretion.

government agencies, that in the course of his covert activities Stewart's father regularly possessed, interdicted and sold firearms and other munitions of war,[5] that Stewart's father in fact procured the weapons involved in this case, and that the government failed to fully disclose such evidence to Stewart. Even assuming that Stewart's allegations are true, however, Stewart fails to establish a *Brady* violation. Evidence regarding her father's covert activities is, as discussed earlier, totally irrelevant to the issue of whether eighteen months after her father's death Stewart illegally possessed and transferred firearms. Such evidence was thus neither favorable nor exculpatory to Stewart, and was certainly not material for *Brady* purposes.

Stewart relies heavily on *United States v. Diaz-Munoz*, 632 F.2d 1330 (5th Cir. Unit B 1980). In *Diaz-Munoz*, the government contended that criminal defendants laundered illegally obtained money through a particular bank account; but defendants contended that the CIA created the bank account and funnelled money through it for anti-Castro activities. The former Fifth Circuit held that, unless the CIA produced its file concerning the bank account for in camera inspection, all charges relating to this bank account must be dismissed. *Id.*, 632 F.2d at 1334.

Dismissal of charges is a strong measure, never to be taken lightly. Moreover, the *Diaz-Munoz* decision is distinguishable because the CIA file in that case was allegedly directly relevant to defendant's guilt or innocence. In contrast, the alleged government files not produced for in camera inspection in the present case are irrelevant to Stewart's guilt or innocence—even assuming that Stewart's allegations regarding the existence and contents of the

file are true. Thus, dismissal is unwarranted.

Stewart also asserts that the government failed to disclose that it promised Zepatis, the key government witness, a lenient sentence in return for his cooperation in the present case. According to Stewart, she learned of this agreement between Zepatis and the government only when, late in the trial, she called Zepatis as a defense witness and Zepatis testified regarding the deal.

Zepatis's testimony indicates that pursuant to an agreement, Zepatis pled guilty to a drug charge in return for the government recommending probation on that charge and dropping four other drug charges. His testimony indicates that on April 26, 1985, a judge disregarded the government's recommendation of probation and sentenced Zepatis to three years incarceration.

■■■ Nothing in the record suggests, however, that the government promised to seek a lenient sentence in return for Zepatis's cooperation in Stewart's case. Indeed, Zepatis did not contact a government agent regarding Stewart's firearms until May 9, 1985—two weeks *after* his own sentencing. Thus, the plea agreement between Zepatis and the government was irrelevant to Stewart's case, and the government had no obligation to disclose it to Stewart.[6]

## IV. Other Alleged Government Misconduct

■■ Stewart argues that the government violated due process by repeatedly intimidating defense witnesses. A defendant claiming denial of due process through government intimidation of defense witnesses must establish, as a threshold matter, that the government's action worked to deprive him of a witness who would have testified on his behalf. *United States v.*

---

5. It is possible that Stewart's father was some sort of secret operative. An affidavit by a retired supervisor of the Bureau of Customs, Neutrality Division, describes her father as "one of the most valuable operatives ever to be under my supervision." Furthermore, this affidavit states that during the thirty years that her father worked as a agent, her father's "activities involved the smuggling, interdiction, and purported sale and purchase of explosives, arms, and munitions of war under the direction and super-

vision of the United States Customs Service." It indicates that her father also worked with the CIA and Department of Defense.

6. Even if the government had an obligation to disclose the plea agreement, there is no reasonable probability that failure to disclose it affected the outcome, because extensive evidence regarding this plea agreement was introduced at trial. Thus, the government's failure to disclose

*Garmany,* 762 F.2d 929, 937 (11th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 811, 88 L.Ed.2d 785 (1986). Stewart fails to make even this threshold showing.

Stewart argues that the government engaged in a wide variety of other misconduct, thereby depriving her of due process. We do not think that the government acted improperly in any of the instances to which she points. Certainly, the government's misconduct did not even begin to approach the level requiring reversal. "In evaluating a prosecutorial misconduct claim, we will only reverse if, viewed in the context of the entire trial, the misconduct may have prejudiced substantial rights of the accused." *United States v. Esle,* 743 F.2d 1465, 1477 (11th Cir.1984).

Accordingly, the judgment of the district court is AFFIRMED.

this information was not material for *Brady* purposes.

Stewart argues that the government failed to disclose other information, thereby violating her due process rights. These arguments do not merit discussion.

