PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 30 2001
THOMAS K. KAHN
CLERK

No. 99-4342

D. C. Docket No. 94-14125-CIV-WDF

JIM ERIC CHANDLER,

Petitioner-Appellant,

versus

MICHAEL W. MOORE, Secretary,
Florida Department of Corrections,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

(January 30, 2001)

Before BIRCH, DUBINA and COX, Circuit Judges.

DUBINA, Circuit Judge:

Petitioner, Jim Eric Chandler ("Chandler"), appeals the district court's order denying his petition for a writ of habeas corpus brought under 28 U.S.C. § 2254. After reviewing the entire record in this case and having the benefit of oral argument and the parties' briefs, we affirm the judgment of the district court.

## I. BACKGROUND

A. *Facts*

An Indian River County, Florida, grand jury returned an eight-count indictment charging Chandler with two counts of first degree murder, two counts of robbery with a deadly weapon, three counts of trafficking in stolen property, and one count of aggravated assault. These charges arose from the robbery of an elderly couple and their death by bludgeoning. A jury recommended a death sentence, and the trial court followed the jury's recommendation.

Chandler reported to the authorities that he found the bodies of Harold and Rachel Steinberger in a wooded area behind their residence. When he reported the crime, Chandler told the officers that Mr. Steinberger had invited Chandler into his home and asked Chandler to mow his grass. Chandler indicated to the officers that he was in the Steinberger's neighborhood checking on his ex-girlfriend's house at the time Mr. Steinberger asked him to perform yard work. The day after he reported the crime, Chandler called Officer Redstone and inquired whether the

2

police were going to arrest him. Officer Redstone responded negatively, but asked Chandler to accompany him to the victims' house and point out any missing items. Chandler acquiesced to Officer Redstone's request.

During the "walk-through," officers asked Chandler why anyone would go in the woods to be killed, and Chandler replied that they [the victims] were ordered out of the house. Chandler mentioned that the victims had been stabbed, although the authorities had not yet released that information. When the officers queried whether the victims might have resisted, Chandler speculated that the victims would not have resisted if the murderer placed a knife to the wife's throat. Chandler further stated that the victims were probably killed for the $150,000 they made upon the sale of their house; however, Chandler knew that the victims had only $10,000 in their bank account. Chandler would have known this information from an examination of the victims' bank account record. Finally, Chandler stated that if he were the officers, he would arrest Chandler.

After Chandler's arrest, he again spoke to Officer Redstone and told him a story of two hit men who were the likely murderers. He posited that the victims were connected to the murder of a man named Gill, and their murders were a retaliation for their involvement with Gill's murder. An investigation revealed, however, that Chandler attended school with a man named Gill who committed

suicide. The investigation further showed that the victims had no connection with Gill's suicide. During the interview, Chandler also stated that he thought the murder weapon was discarded in a body of water, and the officers would never find it.

The evidence at trial indicated that Mr. Steinberger's hands were tied behind his back with a dog leash. An autopsy revealed that the victims had been killed by blows to the head administered by a blunt object, possibly a baseball bat. The autopsy also indicated that both victims had been stabbed numerous times in the back. Chandler's ex-girlfriend testified at the trial that Chandler had been checking on her house weeks prior to the Steinberger's murders. Additionally, the evidence showed that numerous personal items were missing from the victims' house. Witnesses testified that Chandler sold these items to them, telling prospective buyers that he needed money to bail his brother out of jail. Chandler's brother and mother testified, however, that the brother had never been in jail.

B. *Procedural History*

A jury convicted Chandler of two counts of first degree murder and recommended the death penalty. The trial court followed the jury's recommendation and imposed a death sentence. On appeal, the Florida Supreme Court affirmed Chandler's convictions, but remanded for re-sentencing because the

4

trial court erroneously excused two prospective jurors. *Chandler v. State*, 442

So.2d 171 (Fla. 1983). Chandler's second jury also recommended a death

sentence, which the trial court imposed. The Florida Supreme Court affirmed.

*Chandler v. State*, 534 So.2d 701 (Fla. 1988), *cert. denied*, 490 U.S. 1075 (1989).

Chandler then filed a Rule 3.850 motion for post-conviction relief raising thirteen

issues. Chandler also filed a state habeas petition raising eleven issues. The trial

court denied all relief without conducting an evidentiary hearing. The Florida

Supreme Court upheld the trial court's rulings. *Chandler v. Dugger*, 634 So.2d

1066 (Fla. 1994). Chandler then filed a petition for habeas relief pursuant to 28

U.S.C. § 2254, which the district court denied. Chandler then perfected this

appeal.

## II.  ISSUES[1]

1. Whether the trial court's comments at the capital trial deprived Chandler

of the presumption of innocence and relieved the State of its burden of proof in

violation of the Due Process Clause of the Fourteenth Amendment.

---

[1] The district court granted Chandler a Certificate of Appealability ("COA"), but failed to enumerate the issues for our review. 28 U.S.C. § 2253(2) & (3) ("A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right. The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2)."). Since the district court did not enumerate the issues for our review, we grant the COA only as to the specific issues Chandler presents to us in his appellate brief.

2.  Whether the prosecuting attorneys' comments at the trial deprived Chandler of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights.

3.  Whether the State knowingly presented false or misleading evidence and failed to disclose exculpatory evidence at Chandler's re-sentencing.

4.  Whether the prosecuting attorneys' comments at Chandler's re-sentencing hearing deprived him of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights.

5.  Whether Chandler's Sixth, Eighth, and Fourteenth Amendment rights were violated when the trial court denied his challenges for cause under *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S.Ct. 2222 (1992), and whether his counsel was ineffective for failing to raise the issue on direct appeal.

6.  Whether the State violated Chandler's right of confrontation when it presented hearsay evidence at Chandler's re-sentencing hearing.

7.  Whether Chandler's death sentence violates *Sochor v. Florida*, 504 U.S. 527, 112 S.Ct. 2114 (1992).

## III.  STANDARD OF REVIEW

"We review the district court's grant or denial of habeas corpus relief *de novo.*" *Wright v. Hopper,* 169 F.3d 695, 701(11th Cir.), *cert. denied,* 120 S.Ct. 336 (1999).

6

## IV.  DISCUSSION

### A.  *Trial court's comments*

Chandler argues that the trial court's comments at his trial indicated a bias in favor of the State, thus relieving the State of its burden of proof and violating his Due Process rights.  Chandler proffers two instances of alleged prejudicial court comments.  The first comment occurred during voir dire when defense counsel asked a prospective juror if she thought Chandler was in trouble.  The trial court stated, "[i]t's obvious he's in trouble." [R. Vol. 5, Exh. A, p.821].  The second comment occurred when the trial court questioned the prospective jurors about pretrial publicity.  After the prospective juror stated that she might have an opinion about Chandler's guilt or innocence, the trial court asked, "is that opinion such that it cannot be changed by the evidence and testimony that comes out and takes place during this trial?" [R. Vol. 4, Exh. A, p. 34].

The second comment is not properly before this court for review.  Chandler raised this issue for the first time in his Rule 3.850 state post-conviction motion.  The issue was included in Chandler's cumulative errors issue.  On appeal, the Florida Supreme Court found that issue barred because it could have been raised on direct appeal.  *Chandler*, 634 So.2d at 1068.  Since the last state court to consider the issue determined that it was procedurally barred, the issue is barred

7

from federal review. *Harris v. Reed*, 489 U.S. 255, 263 109 S.Ct. 1038 (1989). Since the Florida Supreme Court found the issue to be procedurally barred, we are precluded from addressing the merits unless Chandler can demonstrate "cause and prejudice" for his procedural default or that he is "actually innocent." *Johnson v. Singletary*, 938 F.2d 1166, 1174-75 (11th Cir. 1991). Chandler has not demonstrated that either exception applies to his case.

The first comment is properly before this court for review. Chandler raised this issue on direct appeal, and the Florida Supreme Court found no reversible error. [R. Vol. 10, Exh. E]; *Chandler*, 442 So.2d at 172, n.1. We agree that this comment, when viewed in its entirety and in the proper context, did not undermine Chandler's presumption of innocence. The comment at issue arose in the following context:

> Mrs. Watson: Well, I distinctly remember when I read it, when it first happened, that I had sympathy for the mother.
>
> Mr. Maslanik: For the mother?
>
> Mrs. Watson: For the mother, for the people, for the ones, you know –
>
> Mr. Maslanik: When you say you had sympathy for the mother, who were you talking about?
>
> Mrs. Watson: Well, I was thinking of his mother. I guess, because I had lost a son, you know, and by him getting in trouble like that, I had compassion for her.

8

Mr. Maslanik: So when you read the articles or whatever you read or heard, you felt that he was in trouble?

Mrs. Watson: Yes, I felt he was in trouble.

. . . .

Mr. Maslanik: Do you feel that in any way he's in trouble?

Mr. Stone: Well, You Honor, I'm going to object to that. I don't think that's a proper question.

The Court: I'll sustain the objection. It's obvious he's in trouble.

Mr. Maslanik: Your Honor, I would object to that. I don't think he's in any kind of trouble. He's been charged and the evidence may not be sufficient and he may not be guilty –

The Court: That's very true. But if getting charged, if that's not being in trouble, I think that's –

Mr. Maslanik: . . . I would also ask The Court to please refrain from making remarks about the fact he's in trouble. That gives the jurors some indication that The Court has a feeling he is in trouble or in some way there is a problem with him being here. He starts out with the presumption of innocence –

The Court: This is true. But anytime a jury panel laughs when you ask that question – it was obvious to everybody in this courtroom that any person charged with a crime this serious is in trouble. There is no two ways about it. It's just an improper question so I'll sustain the objection.

[R. Vol. 5, Exh. A, ¶. 819-822.].

We find nothing untoward in the trial court's comment. This one comment, standing alone, did not deprive Chandler of his presumption of innocence,

9

especially in light of the court's several explanations regarding the concepts of presumption of innocence and the State's burden of proof. Moreover, the court properly instructed the jury regarding Chandler's presumption of innocence, the State's burden of proof, and the fact that anything the court or the attorneys say is not evidence. Accordingly, we hold the comment was not erroneous and did not deprive Chandler of his Due Process rights. *See e.g., United States v. Cortez*, 757 F.2d 1204, 1208 (11th Cir. 1985) (rejecting petitioner's claim that judge's remarks were improper as the comments were direct responses to questions and the jury was properly instructed not to consider the judge's comments as evidence).

B. *Prosecutor's comments and actions at trial*

Chandler argues that the prosecutor used a series of improper comments that rendered his trial fundamentally unfair. Chandler objected to some of these comments and did not object to other comments he challenges. He claims that the prosecutor attempted to inflame the jury's passions, maligned the defense, misstated the law, misrepresented the facts, and commented on Chandler's right to remain silent. Additionally, he contends that the prosecutor engaged in unprofessional theatrics when he used the alleged murder weapon, a baseball bat, to repeatedly smash a briefcase on the defense table.

Chandler first raised this issue in his Rule 3.850 post-conviction motion, along with a claim of ineffective assistance of counsel for failing to object to some of the allegedly inflammatory comments. On appeal of the denial of his Rule 3.850, Chandler argued that his counsel were ineffective for failing to object to the prosecutor's improper comments. The Florida Supreme Court found that Chandler could not meet the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), to establish his claim of ineffective assistance of counsel. The Florida Supreme Court found that if the substantive claims had been raised on direct appeal, the court would have found no reversible error. *Chandler*, 634 So.2d at 1069.

In his state habeas petition, Chandler also raised the claim of ineffective assistance of counsel for failing to object to the prosecutor's comments and actions. Chandler also argued that his appellate counsel was ineffective for failing to challenge these comments on appeal. The Florida Supreme Court addressed the claim as one of ineffective assistance of appellate counsel and found that if appellate counsel had raised the issues on appeal, the court would have found them to be without merit. *Id.* at 1068. The court also noted that the substantive claims should have been raised on direct appeal and to overcome the procedural bar Chandler included allegations of ineffective assistance of counsel. *Id.* at 1067.

11

Since the Florida Supreme Court found the substantive claims procedurally barred, we will not consider them in light of Chandler's failure to demonstrate cause and prejudice to excuse the procedural default. We will only consider Chandler's claim of ineffective assistance of counsel for failing to object to the allegedly improper comments. In order to establish a claim of ineffective assistance of counsel, Chandler must show that counsels' performance was deficient and that this deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

Chandler's first challenge concerns the prosecutor's comment to a prospective juror that "if the case didn't hold water, you would never get to hear it and make a deliberation." [R. Vol. 4, Exh. A, p. 377]. The prosecutor's comment was in response to a prospective juror's statement that "I read pretty elaborately. There are quite a few cases where they don't hold water if it's just circumstantial evidence." [*Id.*]. Chandler claims that his counsel were ineffective for failing to object to this comment. This comment was not improper in light of the context in which it was uttered. The prosecutor was explaining the concept of circumstantial evidence and responding to a comment by a prospective juror. Since it was not an erroneous comment, Chandler's counsel cannot be deemed ineffective for failing to object to it.

12

The next comment with which Chandler takes issue also occurred during jury selection. The prosecutor stated that "the two defense lawyers here have said that he's entitled to a presumption of innocence and they asked you can you presume or believe he is innocent." [R. Vol. 4, Exh. A, p. 510]. In light of the trial court's numerous instructions that Chandler is entitled to a presumption of innocence, there is no error in this comment. Accordingly, Chandler's counsel were not ineffective for failing to object to the comment.

Another comment Chandler challenges also occurred during jury selection when the prosecutor stated to the entire jury panel, "[t]he defendant doesn't have to say anything, he doesn't have to prove anything. The exceptions, or one of the exceptions, is where the defense of alibi is raised." [R. Vol. 5, Exh. A, p. 945]. The prosecutor made this comment after his explanation regarding the State's burden of proof and during his explanation regarding the alibi defense. There was nothing improper in the statement and Chandler's attorneys cannot be deemed ineffective for failing to object to the comment.

Chandler challenges another comment which occurred during jury selection. The prosecutor stated that "[n]one of us know what evidence is going to come in at this point. We all know what we want to get in, but nobody knows what evidence you're going to see, observe or hear." [R. Vol. 5, Exh. A, p. 1158]. Chandler fails

13

to acknowledge the remainder of the prosecutor's comment which explained that the evidence the jury could consider was evidence from the witness stand or exhibits. The prosecutor asked if the jury would "weigh all the evidence and base [their] verdict on the conclusion that [they] have from weighing it all?" [*Id.*]. The prosecutor's comment and accompanying explanation were not erroneous. Therefore, Chandler's counsel were not ineffective for failing to object to the comment.

Chandler challenges the prosecutor's comments during closing argument. The first comment referred to a witness who the prosecutor stated was "the biggest liar in Indian River County" and the State did not call her as a witness because it could not "rely on her credibility." [R. Vol. 8, Exh. A, p. 3604-05]. Chandler also claims that the prosecutor referred to Chandler's mother as a liar and erroneously commented on the number of stab wounds each victim received as representing the number of years Chandler had spent in jail. [R. Vol. 8, Exh. A, p. 3599-3600; 3622]. The prosecutor's comment on the credibility of the witness was an accurate statement because the witness told four different stories regarding Chandler's whereabouts during a crucial time. Contrary to Chandler's assertion, the prosecutor stated he was *not* going to call Chandler's mother a liar. The prosecutor asked the jury to view dubiously her testimony in light of the obvious bias of the

14

mother/child relationship. As to the number of stab wounds, the prosecutor was correctly commenting on the evidence. His reference to Chandler's years in prison was not inflammatory because the jury heard testimony that Chandler previously had been in jail.

Accordingly, we conclude none of the comments rose to the level of fundamental error. *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868 (1974); *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997). Therefore, Chandler's counsel cannot be deemed ineffective for failing to object to these comments, and Chandler is not entitled to relief on this claim.

C. *Conspiracy charge evidence*

Chandler argues that the State's use of a "bogus" conspiracy to escape from prison charge denied him due process. He further contends that the State did not disclose this exculpatory evidence; the State knowingly presented false or misleading evidence that prevented him from presenting mitigating evidence; and the State "convinced" another inmate charged in the conspiracy not to testify about Chandler's innocence. Chandler states that at his re-sentencing hearing, he planned to call 12 correctional officers who would testify that Chandler had adapted well to prison life and could remain in prison the rest of his life without causing harm to anyone. To rebut this, the State presented evidence of a

15

conspiracy charge, which arose one week before his re-sentencing. Chandler claims that as a result of this "bogus" conspiracy charge, he did not call the correctional officers to testify on his behalf because the conspiracy charge nullified the officers' testimony. Additionally, Chandler contends that the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963), by withholding the conflicting evidence in support of the conspiracy charge. Furthermore, Chandler claims that the State intimidated another inmate charged in the offense not to testify on Chandler's behalf.

Chandler raised this issue in his Rule 3.850 motion, and the trial court found the issue to be procedurally barred because it could have been raised on direct appeal. [R. Vol. 15, Exh. CC]. On appeal, the Florida Supreme Court did address the merits of Chandler's claim and found that the defense knew about the State's problems with the escape charge. *Chandler*, 634 So.2d at 1068. The court found meritless Chandler's claim that the State "convinced" an inmate not to testify on Chandler's behalf because the record showed that the inmate's counsel advised him not to testify since the court had not sentenced him yet. *Id.*

First, the record demonstrates the State did not prevent Chandler from presenting mitigation evidence at his re-sentencing. Chandler presented mitigating evidence through his mother, siblings, step-father, and Dr. Rifkin, a clinical

16

psychologist.  Dr. Rifkin testified that Chandler had adapted very well to prison life and he could continue to live in a prison setting without being a threat to others. [R. Vol. 12, Exh. M., p. 619-20].  Responding to the question whether Chandler's involvement in an escape would change his opinion, Dr. Rifkin stated that he would need more information regarding Chandler's involvement. [*Id.* at 643].  He also stated that he understood that there were various opinions regarding Chandler's involvement.  "One person stating that he had nothing to do with it and another person stating some partaking in the meetings and what have you." [*Id.*].  Thus, through Chandler's expert, the jury heard that the State's case on the conspiracy charge was weak.  Moreover, the State did nothing to prevent Chandler from calling the correctional officers as witnesses.  The presentation of rebuttal evidence is not a barrier to the presentation of mitigation evidence.

In order to establish a *Brady* violation, Chandler must demonstrate that the State possessed evidence favorable to him; that Chandler did not possess the evidence nor could he have obtained it himself with any reasonable diligence; that the State suppressed the favorable evidence; and that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different. *Wright v. Hopper*, 169 F.3d at 701-02. Chandler cannot meet this burden.  First, the allegedly withheld evidence is not

17

"material" because there is no reasonable probability that had the evidence been disclosed to Chandler, the result of the proceeding would have been different. *United States v. Stewart*, 820 F.2d 370, 374 (11th Cir. 1987). In other words, the jury voted unanimously for the imposition of the death penalty, and there is no reasonable probability that the jury would have imposed a life sentence in view of the suspect nature of the State's conspiracy charge.

Second, Chandler could have possessed the evidence through the exercise of reasonable diligence. Since Chandler knew of the escape charge, and knew of the suspect nature of the charge, Chandler knew what evidence to present to rebut the charge. Chandler's own expert commented on the fact that the evidence to prove the escape charge was contradictory. Furthermore, Chandler presents no evidence to support his allegation that the State "intimidated" the inmate not to testify. The record clearly shows that the inmate consulted with his attorney and refused to testify because he had not been sentenced yet. [R. Vol. 12, Exh. M., p. 685-95]. Accordingly, we conclude Chandler is not entitled to relief on this claim.

D. *Prosecutor's comments and actions at re-sentencing*

Chandler highlights many prosecutorial comments which he contends rendered his re-sentencing unfair. Chandler also adds claims of ineffective assistance of counsel for failing to object to the comments and failing to challenge

18

these comments on appeal. Only one of the comments is properly preserved for our review because Chandler challenged it on direct appeal following his re-sentencing. *Chandler*, 534 So.2d at 703. Chandler's claim that his counsel was ineffective for failing to object to the prosecutor's comments is properly before us for review because Chandler raised this claim on appeal of the denial of his Rule 3.850 motion. The Florida Supreme Court found that Chandler did not meet the *Strickland* standard as to this claim. *Chandler*, 634 So.2d at 1069. Chandler's claim of ineffective assistance of appellate counsel is also before us for review because Chandler raised this issue in his state habeas petition. The Florida Supreme Court found that appellate counsel could not be deemed ineffective for failing to argue claims that had not been preserved for appeal. *Id.* at 1068. As to the claims which were preserved, the court found that appellate counsel was not ineffective for failing to challenge them on appeal because they were meritless. *Id.*

The one substantive prosecutorial comment which Chandler preserved for our review is the statement, "Your Honor, Mr. Udell asked him if this was, you know, consistent from behind, you know, what evidence is there that he was hit from behind, I mean, no one knows at this point except Mr. Chandler." [R. Vol. 11, Exh. M, p. 434-35]. Chandler's counsel objected and the trial court issued a curative instruction telling the jury to disregard the statement. On appeal, the

19

Florida Supreme Court found the comment to be harmless since Chandler had been convicted of the crimes, and therefore, would know how they were committed. *Chandler*, 534 So.2d at 703.

We agree. A jury found Chandler guilty of the murders, so Chandler's guilt had been established. Moreover, this sole comment, not repeated at any other stage of the proceeding, cannot be construed as an invitation for the jury to take into consideration Chandler's silence, especially in light of the trial court's curative instruction. Moreover, the trial court instructed the jury numerous times regarding Chandler's right to remain silent and the presumption of innocence.

Chandler cannot prevail on his claims of ineffective assistance related to this comment. The record shows that Chandler's counsel did object to the comment, and appellate counsel raised the issue on appeal.

In order to establish a claim of ineffective assistance of counsel with regard to the comments to which counsel did not object, Chandler must show that his counsel's performance was deficient, and this deficient performance prejudiced the outcome of his sentencing. *Strickland*, 466 U.S. at 687. This two-pronged test is also applied to the sentencing phase because the capital sentencing proceeding is similar to a trial in its adversarial format and counsel's role is similar. *Id.* at 686-87. To succeed on this claim, Chandler must show that "counsel's conduct so

20

undermined the proper functioning of the adversarial process that the [sentence] cannot be relied on as having produced a just result." *Mincey v. Head*, 206 F.3d 1106, 1143 (11th Cir. 2000).

Chandler takes issue with the prosecutor's comment during jury selection, that "we feel, like, if you follow the law and listen to the Judge's instructions carefully and apply the facts, there's only one possible recommendation." [R. Vol. 13, Exh. M, p. 596]. Defense counsel did not object and had no reason to object since the prosecutor's statement is a correct statement of the law. *Johnson v. Lynaugh*, 821 F.2d 224, 226 (5th Cir. 1987) (urging jurors to follow the law is permissible argument). Chandler particularly takes issue with the prosecutor's opinion that "there's only one possible recommendation." In light of the trial court's instructions that anything the attorneys said was not evidence, we hold that there is no error in the prosecutor's statement.

Chandler challenges the prosecutor's comments regarding contusions the victims suffered. Chandler claims that there was no evidence of any contusions and his counsel should have objected to this reference to facts not in evidence. We conclude that the prosecutor's statement is harmless in light of the evidence showing that the victims suffered severe blows to the head and the victims' injuries included lacerations, fractures, and post-mortem stabbing. In light of this

21

evidence, an innocuous statement about contusions is irrelevant. There was no reason for counsel to object. Chandler also challenges the prosecutor's statement that Chandler might be eligible for parole in less than 25 years if the jury recommended a life sentence. This comment, too, was an accurate statement to which counsel had no reason to object. Accordingly, Chandler is not entitled to relief on these claims of ineffective assistance of counsel.

E. *Challenges for cause and ineffective assistance*

Chandler argues that at his re-sentencing, he had to use four of his allotted peremptory challenges on prospective jurors who should have been excused for cause. He asserts that the issue was preserved at re-sentencing and his appellate counsel was ineffective for failing to raise this issue on appeal. Chandler did raise this issue in his state habeas petition, and the Florida Supreme Court found the issue to be procedurally barred because Chandler did not raise the issue on direct appeal. *Chandler*, 634 So.2d at 1067. The court noted that Chandler also asserted an ineffective assistance of appellate counsel claim in order to overcome the procedural bar. The court determined that Chandler's appellate counsel was not ineffective because if counsel had raised the issue, the court would have found it meritless. *Id.* at 1068.

22

We need only consider Chandler's claim of ineffective assistance of appellate counsel since the Florida Supreme Court found the substantive claim to be procedurally barred. *Harris*, 489 U.S. at 263. Chandler is not entitled to relief on his claim of ineffective appellate counsel. As the Florida Supreme Court noted, the issue had no merit. Chandler's primary focus concerned four jurors who did not sit on his re-sentencing jury. The record indicates that the one juror who did sit, Ms. Dodge, was fit for jury service. Moreover, Chandler's claim is not one of constitutional infirmity. *See e.g., Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273 (1988) (reaffirming rule that defendant is not constitutionally entitled to peremptory challenges). Chandler's appellate counsel was not ineffective for failing to raise a nonmeritorious issue. *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

F. *Confrontation Clause*

Chandler argues that at his re-sentencing, the State presented hearsay evidence to establish an aggravating circumstance and this violated his Confrontation Clause rights. On appeal, the Florida Supreme Court did not find any merit to this argument. The court noted that the trial court admitted this hearsay evidence pursuant to Fla. Stat. § 921.141(1), which provides that "evidence may be presented as to any matter that the court deems relevant to the

23

nature of the crime and the character of the defendant" and "[a]ny such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements." The court found the statute constitutional because it does provide a defendant the opportunity to confront the State's witnesses. *Chandler*, 534 So.2d at 702.

The Sixth Amendment guarantees a defendant an adequate opportunity to cross-examine adverse witnesses. *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838 (1988). Chandler had this opportunity and capitalized on it during trial but chose not to during his re-sentencing phase. At trial, Chandler's counsel vigorously cross-examined the State's witnesses to whom Officer Redstone referred at the re-sentencing when he gave his recitation of the evidence of guilt. The State did not do anything to prevent Chandler from rebutting this hearsay evidence. The fact that Chandler chose not to rebut any hearsay testimony does not make the admission of such testimony erroneous. Moreover, having reviewed both the trial and the re-sentencing transcript, we conclude that Officer Redstone's synopsis was consistent with the witnesses' trial testimony. Accordingly, we see no Confrontation Clause violation.

Moreover, we conclude that there is no Confrontation Clause violation because we agree with the Seventh Circuit that hearsay evidence is admissible at a capital sentencing. *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1387-88 (7th Cir. 1994). This proposition does contain one caveat: that the state statute protect a defendant's rights by giving him/her the opportunity to rebut any hearsay information. If the statute grants this protection, then it comports with the Sixth Amendment's Confrontation Clause. We note, however, that if we determined that hearsay evidence is *per se* inadmissible in a capital sentencing, we would be announcing a new rule of law. Therefore, the new rule's application to this case would be barred by the retroactivity principles of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060 (1989 ).

F. *Sochor v. Florida claim*

Chandler argues that his death sentence violates *Sochor*, 504 U.S. 527. Chandler did not challenge his death sentence on direct appeal. *Chandler*, 534 So.2d at 704. Chandler first challenged the Florida Supreme Court's automatic review of his death sentence in his state habeas petition and on appeal of the denial of his Rule 3.850 motion. The Florida Supreme Court found the issue to be procedurally barred. *Chandler*, 634 so.2d at 1068-69. Therefore, the issue is procedurally barred from federal habeas review. *Harris*, 489 U.S. 255. In light of

25

Chandler's failure to demonstrate cause and prejudice for the procedural default, we decline to address the claim.

## V. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment denying habeas corpus relief  to Chandler.

**AFFIRMED.**