Kevin Ray **HILLARD**, Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

No. 2002–SC–0702–MR.

Supreme Court of Kentucky.

Feb. 17, 2005.

As Modified April 22, 2005.

---

**24.** *Chamblee,* 249 S.W.2d at 777.

**25.** *Id.*

**26.** *Id.*

Euva D. May, Assistant Public Advocate, Appellate Division, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Michael Harned, Brian T. Judy, Assistant Attorneys General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

Appellant, Kevin Ray Hillard, was convicted by an Ohio Circuit Court jury of one count of unlawful transaction with a minor in the first degree, KRS 530.064(1), a Class B felony, for knowingly inducing A.W., age fifteen, to engage in illegal sexual activity; and one count of unlawful transaction with a minor in the third degree, KRS 530.070(1)(a), a Class A misdemeanor, for knowingly giving an alcoholic beverage to N.M., age seventeen. He was sentenced to twenty years in prison for the felony conviction and to twelve months in the Ohio County Detention Center and a $500.00 fine for the misdemeanor. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), asserting reversible error in the following respects: (1) insufficiency of the evidence to sustain either conviction; (2) exclusion of evidence of the victim's sexual history; (3) juror misconduct when a prospective juror failed to answer questions propounded during voir dire; and (4) prosecutorial misconduct consisting of (a) the issuance of extrajudicial subpoenas to require two witnesses to appear at the prosecutor's office for *ex parte* interviews; (b) intimidation of a defense witness by threatening to charge the witness with perjury; (c) failure to provide discovery of notes taken during a witness interview that were used during cross-examination of the witness at trial; and (d) use of those notes to introduce into evidence the unsworn statements of the witness. The Commonwealth concedes that the evidence was insufficient to convict Appellant of the offense of unlawful transaction with a minor in the third degree. Thus, we vacate the conviction and sentences imposed for that offense. Finding no other reversible error, we affirm the conviction and sentence imposed for unlawful transaction with a minor in the first degree.

## I. SUFFICIENCY OF THE EVIDENCE.

KRS 530.064(1) provides, *inter alia:*

A person is guilty of unlawful transaction with a minor in the first degree when he knowingly induces, assists, or causes a minor to engage in illegal sexual activity....

On the night of June 29–30, 2001, Appellant, who was then at least twenty-nine years of age,[1] hosted a party at his residence in Beaver Dam, Ohio County, Ken-

---

1. Appellant concedes in his brief that he was twenty-nine years old when the conduct in question occurred. Other documents in the record list his date of birth as July 21, 1969.

tucky, that was attended by A.W. and N.M., both minors, and four or five other persons who were adults. A.W. testified at trial that while he and Appellant were in a bathroom, Appellant offered to pay him twenty dollars if he would "fist" Appellant. A.W. agreed and removed a condom from his pocket and placed it over his fist. Appellant bent over the bathtub and pulled down his pants. A.W. then inserted his fist into Appellant's anus. According to A.W., Appellant asked him to hit him and call him names while performing this act. Another witness testified that Appellant later boasted to her that A.W. had "fisted" him and that it "felt great."

Since KRS 530.064(1) does not further identify "illegal sexual activity," except to exclude offenses involving minors defined in KRS Chapter 531 (pornography) and KRS 529.030 (promoting prostitution in the first degree), inquiry into other sections of the penal code is required in order to determine whether "fisting," as performed by A.W., was an "illegal sexual activity." *See Young v. Commonwealth*, 968 S.W.2d 670, 672 (Ky.1998).

The Commonwealth posits that the conduct described by A.W. violated KRS 529.020 (prostitution), which proscribes "engag[ing] or agree[ing] or offer[ing] to engage in sexual conduct with another person in return for a fee." However, for purposes of KRS Chapter 529, "sexual conduct" is defined as "sexual intercourse or any act of sexual gratification involving the sex organs." Neither a fist nor an anus is a "sex organ." *See State v. Anthony*, 179 Or. 282, 169 P.2d 587 (1946) (instruction properly differentiated between victim's anus and sexual organ); *cf.* KRS 510.010(1) (differentiating between an anus and a sexual organ by defining deviate sexual intercourse as "any act of sexual gratification involving the sex organs of one person and the mouth or anus of another"). Nor was

the conduct described by A.W. "sexual intercourse." Although KRS 510.010(1) includes "penetration of the anus of one person by a foreign object manipulated by another person" within the definition of "deviate sexual intercourse," and KRS 510.010(8) includes the "penetration of the sex organs of one person by a foreign object manipulated by another person," within the definition of "sexual intercourse," KRS 510.010(9) defines "foreign object" as "anything used in the commission of a sexual act *other than the person of the actor*." (Emphasis added.) We further note that the jury instruction on unlawful transaction with a minor in the first degree did not include payment of a fee as an element of the offense but did include A.W.'s age, which is an element of that offense but is not an element of the offense of prostitution. It is, however, an element of the offense of promoting prostitution in the first degree, which, as noted *supra*, is specifically excluded from illegal sexual activity constituting unlawful transaction with a minor in the first degree.

However, the conduct described by A.W. did violate KRS 510.130(1), which provides that a person commits the offense of sexual abuse in the third degree when:

(a) He subjects another person to sexual contact without the latter's consent.

(b) In any prosecution under this section, it is a defense that:

    1. The other person's lack of consent was due solely to incapacity to consent by reason of being less than sixteen (16) years old; and

    2. The other person was at least fourteen (14) years old; and

    3. The actor was less than five (5) years older than the other person.

A.W. was fifteen years of age, thus statutorily incapable of consent, KRS 510.020(3)(a), and Appellant was more than five years older than A.W. Thus, the issue

becomes whether "fisting" constitutes "sexual contact."[2]

■ KRS 510.010(7) defines "sexual contact" as "any touching of the sexual *or other intimate parts* of a person done for the purpose of gratifying the sexual desire of either party." (Emphasis added.) As noted in *Bills v. Commonwealth*, 851 S.W.2d 466 (Ky.1993), the reference to "other intimate parts" is not a rephrasing of "sexual" but contemplates parts of the body "other than sexual organs alone." *Id.* at 472.

> Certainly a proper test to determine if the part of the body is "intimate" should revolve around an examination of three factors: 1) What area of the body is touched; 2) What is the manner of the touching, and 3) Under what circumstances did the touching occur.

*Id.* Professors Lawson and Fortune assert matter-of-factly that "[d]igital penetration of the ... anus is sexual abuse." Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law* § 11–6(a)(1), at 437 (1998). Under the facts of this case, we have no difficulty concluding that A.W.'s "fisting" of Appellant was "sexual contact." Appellant's statement that it "felt great" sufficed to prove that Appellant solicited the conduct for the purpose of his own sexual gratification.

The 1974 Commentary to KRS 510.010 notes that the contact can be with either the victim or the actor. KRS 510.010 (1974 cmt.). Thus, it is immaterial to Ap-

pellant's culpability that A.W. "fisted" him rather than vice versa. The definition of "sexual contact" in KRS 510.010(7) is almost identical to that contained in Section 213.4 of the Model Penal Code. The Commentary to that section states that "[t]he section expressly applies to the actor who causes another to have sexual contact with him...." Model Penal Code § 213.4, cmt. 2.

We conclude that the evidence was sufficient for a jury to believe beyond a reasonable doubt that Appellant committed the offense of unlawful transaction with a minor in the first degree. *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991); *cf. Young*, 968 S.W.2d at 673 ("If Appellant had successfully persuaded P.C. to engage in any sexual activity with him ..., the offense described in KRS 530.064 would have been completed.").

## II. EXCLUSION OF EVIDENCE OF VICTIM'S SEXUAL HISTORY.

■ Appellant asserts that the trial court erred in sustaining the Commonwealth's motion to exclude evidence of A.W.'s sexual history, correctly noting that the pre–2003 version of KRE 412 (rape shield law) applied only to criminal prosecutions under KRS 510 or KRS 530.020 (incest).[3] However, to be admissible, evidence must still be relevant, KRE 402, and, even if so, may be excluded if cumulative. KRE 403. Obviously, the evidence was not relevant to prove consent since

---

**2.** Contrary to the accusation leveled by the dissenting opinion, *post* at ——, this issue was not "formulate[d]" by this Court and "retroactively applie[d]" to this case without notice to Appellant. Appellant, himself, posits that proof of the illegal sexual activity described in KRS 510.130(1) would satisfy that element of the offense described in KRS 530.064(1). Appellant's brief, p. 31. His only claim in that respect is that inducing A.W. to "fist" him was not an activity proscribed by KRS

510.130(1). Further, Appellant has never asserted any defect in the indictment or in the jury instructions either in the circuit court or on this appeal.

**3.** Effective July 1, 2003, KRE 412 was amended so that it now applies to "any civil or criminal proceeding involving alleged sexual misconduct." This case was tried prior to the effective date of the amendment.

A.W. was statutorily incapable of consent because of his age. Appellant asserts that the evidence was relevant to prove A.W.'s sexual orientation and that he had a sexual relationship with another prosecution witness, J.S., which would tend to prove J.S.'s bias against Appellant. A.W.'s sexual orientation per se was irrelevant. J.S. admitted on cross-examination that he was homosexual, that he was living in Appellant's home at the time of the conduct in question, and that Appellant ordered him to move out of the residence when he and Appellant became sexually involved with the same person (not further identified). Further, N.M., who testified for the defense, made the unsolicited statement that J.S. and A.W. were "lovers." There was no objection or motion to strike this statement. Any further evidence related to A.W.'s relationship with J.S. or J.S.'s bias against Appellant would have been cumulative. Finally, no avowal was made of the excluded testimony; thus the issue was not preserved for appellate review. KRE 103(a)(2); *Commonwealth v. Ferrell,* 17 S.W.3d 520 (Ky.2000).

### III.  ALLEGED JUROR MISCONDUCT.

Juror No. 35 was the ex-brother-in-law of defense witness, Melissa Cline, and may or may not have been an acquaintance of Appellant. He was one of the twelve jurors who sat on the case and agreed to both verdicts. Appellant asserts that Juror No. 35 did not respond to voir dire questions as to whether any jurors knew Appellant or any witnesses for the defense. In claiming reversible error for this, Appellant relies on *United States v. Colombo,* 869 F.2d 149, 151 (2nd Cir.1989), for the proposition that deliberate concealment or purposely incorrect or misleading answers by a juror may impair a party's right to meaningful exercise of causal or peremptory challenges; *United States v. Perkins,*

748 F.2d 1519, 1532 (11th Cir.1984), for the proposition that false answers give rise to a presumption of bias ("Goad's dishonesty, in and of itself, is a strong indication that he was not impartial."); and *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984), for the proposition that a new trial may be obtained by demonstrating that a juror "failed to answer honestly a material question on *voir dire,*" and "that a correct response would have provided a valid basis for a challenge for cause." *See also Adkins v. Commonwealth,* 96 S.W.3d 779, 796 (Ky.2003); *Anderson v. Commonwealth,* 864 S.W.2d 909, 911–12 (Ky.1993). However, we need not determine the applicability of these precedents to this case, because there is no evidence that Juror No. 35 failed to honestly answer a material question asked of him on voir dire.

■ Juror No. 35 was not one of the thirty-one persons initially seated as potential jurors for this case (enough for twelve jurors, one alternate, and nine peremptory strikes for each side, RCr 9.40(1) and (2)). The trial judge asked the initial thirty-one potential jurors whether any of them knew Appellant, the Commonwealth's attorney, the assistant Commonwealth's attorney who was prosecuting the case, or defense counsel. The judge then asked the prosecutor and defense counsel to read the names of their witnesses to the potential jurors. However, the witnesses were not brought into the courtroom for visual recognition. Defense counsel read the names of the potential defense witnesses, including Melissa Cline. When asked if they recognized any of those names or knew any of the potential witnesses for the defense, none of the potential jurors professed to know Cline or to recognize her name. As *voir dire* progressed, several prospective jurors were

excused for cause and replaced. II Ad. Proc. § 10(3). In each instance, the judge asked the replacement juror if he or she would have responded affirmatively to any of the previous questions.

Approximately thirty minutes into voir dire, Juror No. 35 was called to replace a juror who was excused for cause. For some unknown reason, defense counsel's microphone was on and Appellant can be clearly overheard stating, "I know him," and identifying Juror No. 35 by name. Upon his arrival at the jury box, Juror No. 35 immediately volunteered that he knew the Commonwealth's attorney because he (the juror) had been a crime victim and the Commonwealth's attorney had prosecuted the case against the perpetrator of that crime. However, Juror No. 35 was not asked, as other potential jurors had been, whether he would have responded affirmatively to any of the other previous questions. During defense counsel's voir dire, Juror No. 35 was questioned about his experience as a crime victim but was never asked if he knew Appellant or any of the potential witnesses. Since the juror was never asked those questions, he cannot be deemed to have failed to answer questions propounded to him.

At a hearing on Appellant's post-trial motion for a new trial, a subpoena had been issued for Juror No. 35's appearance but had not been served. The motion was continued until the next day. Again, Juror No. 35's attendance had not been procured, but Appellant did not request another continuance. Melissa Cline testified at the post-trial hearing that Juror No. 35 was her ex-brother-in-law, but that she had divorced his brother six months before trial and changed her name from the juror's last name back to her previous married name of "Cline," perhaps explaining why Juror No. 35 did not recognize her name when it was read in open court. She also testified that Juror No. 35 was a "good man" and that she had never had any "trouble" with him. Finally, it could not have prejudiced Appellant that Juror No. 35 did not reveal his acquaintanceship with Appellant if Appellant, himself, recognized that acquaintanceship and never requested that the juror be excused for cause. Absent any evidence that Juror No. 35 deliberately withheld information during voir dire or that any prejudice resulted to Appellant from the failure to acquire this information, no reversible error occurred.

## IV. PROSECUTORIAL MISCONDUCT.

### A. Abuse of subpoena power.

■ The prosecutor caused subpoenas to be served on N.M. and J.S. to appear at his office for *ex parte* interviews. Civil Rule (CR) 45.01 specifically provides that "[s]ubpoenas shall not be used for any purpose except to command the attendance of the witness and production of documentary or other tangible evidence at a deposition, hearing or trial." *See Munroe v. Ky. Bar Ass'n*, 927 S.W.2d 839, 840 (Ky.1996) (disciplining member of the Bar for using a subpoena to obtain *ex parte* information in a divorce case). Criminal Rule (RCr) 7.02 is not so explicit. It states that a subpoena "shall command each person to whom it is directed to attend and give *testimony* at the time and place specified therein." (Emphasis added.) There are no Kentucky cases interpreting this language. However, almost identical language in the corresponding Federal Criminal Rule, FRCrP 17(a), has been consistently interpreted to mean that subpoenas can be used to require a witness's attendance only at formal judicial proceedings and that "[t]he government may not use trial subpoenas to compel prospective trial witnesses to attend pre-

trial interviews with government attorneys." *United States v. LaFuente,* 991 F.2d 1406, 1411 (8th Cir.1993). *See also United States v. Wadlington,* 233 F.3d 1067, 1075 (8th Cir.2000); *United States v. Villa–Chaparro,* 115 F.3d 797, 804 (10th Cir.1997); *United States v. Keen,* 509 F.2d 1273, 1274–75 (6th Cir.1975); *United States v. Hedge,* 462 F.2d 220, 222–23 (5th Cir.1972); *United States v. Standard Oil Co.,* 316 F.2d 884, 897 (7th Cir.1963). The Commonwealth concedes that use of subpoenas to compel N.M. and J.S. to attend a pretrial interview with the prosecutor was improper. We agree.

However, we also agree with the Commonwealth that this misconduct does not require either a dismissal of the indictment or a retrial. After all, the prosecutor may have been able to obtain the same information from the defense witnesses by voluntary interviews. *Standard Oil Co.,* 316 F.2d at 897. The appropriate cure for such misconduct is to preclude the prosecutor from using any information obtained solely from the improper interview. *Rita v. State,* 674 N.E.2d 968, 971 (Ind.1996). Defense counsel, however, did not request that relief but only objected on grounds that the prosecutor had not permitted discovery of the notes he had taken during the interviews. Having failed to raise the issue before the trial court, Appellant has not preserved it for appellate review. RCr 9.22. Since the same information may have been obtained during voluntary interviews, we are unable to conclude that manifest injustice resulted from the improper interviews. KRE 103(e); RCr 10.26.

*B. Threatening or intimidating witnesses.*

The prosecutor revealed during his cross-examination of N.M. not only that he had issued a subpoena to compel N.M.'s attendance at an *ex parte* investigative interview, but also that, prior to the interview, he informed N.M. of the definition of perjury. N.M. testified that he believed the prosecutor was trying to intimidate him into agreeing with the prosecutor's theory of the case. Nevertheless, N.M. testified that both his statements to the prosecutor during the interview and his testimony at trial were truthful.

Although no Kentucky cases have addressed the issue, federal courts have consistently held that a judge or prosecutor who threatens or intimidates a defense witness who is otherwise willing to testify into refusing to testify thereby denies a defendant his or her constitutional rights to due process and compulsory process. *Webb v. Texas,* 409 U.S. 95, 98, 93 S.Ct. 351, 353–54, 34 L.Ed.2d 330 (1972) (per curiam) (judge's unnecessarily strong admonition against perjury aimed at discouraging defense witness from testifying and which caused witness not to testify violated defendant's constitutional rights); *United States v. Vavages,* 151 F.3d 1185, 1188–93 (9th Cir.1998) (prosecutor's thinly-veiled threat to prosecute defense witness for perjury and to withdraw plea agreement in witness's own unrelated case if witness testified in support of defendant's alibi required reversal of defendant's conviction); *United States v. Blackwell,* 694 F.2d 1325, 1334 (D.C.Cir.1982) ("[W]arnings concerning the dangers of perjury cannot be emphasized to the point where they threaten and intimidate the witness into refusing to testify."); *United States v. Morrison,* 535 F.2d 223 (3d Cir.1976) (where witness was previously willing to testify for defense that she (when a juvenile) committed the offense with which Appellant was charged, but invoked her Fifth Amendment rights after prosecutor subpoenaed her to his office and threatened to prosecute her for both that offense and perjury, defendant was entitled to a new trial and, if witness refused to testify and government did not

offer witness immunity, defendant would be entitled to judgment of acquittal).

■ However, "perjury warnings are not improper, per se." *Vavages,* 151 F.3d at 1189. "[A defendant's] rights are not trenched upon by mere information or advice about the possibility of a perjury prosecution, but by deliberate and badgering threats designed to quash significant testimony." *United States v. Davis,* 974 F.2d 182, 187 (D.C.Cir.1992). Reversal is required only when the judge's or prosecutor's conduct interfered substantially with the witness's free and unhampered choice to testify. *United States v. Pinto,* 850 F.2d 927, 932–33 (2nd Cir.1988). Thus, if some other reason motivated the witness's refusal to testify, the threats are deemed harmless. *United States ex rel. Jones v. DeRobertis,* 766 F.2d 270, 274–75 (7th Cir. 1985)(state's contact with inmate witnesses deemed harmless where evidence showed the witnesses may have believed defendant's claim was meritless). And, if the witness did, in fact, testify favorably for the defendant, the threats are deemed harmless. *Johnson v. Renico,* 314 F.Supp.2d 700, 709–10 (E.D.Mich.2004). *See also United States v. Thompson,* 130 F.3d 676, 687 (5th Cir.1997); *United States v. Stewart,* 820 F.2d 370, 375–76 (11th Cir.1987). That is especially true here where N.M. not only testified favorably for the defense but also clearly indicated that he was not intimidated by the prosecutor's reference to the perjury statute.

*C. Failure to provide discovery of prosecutor's notes.*

■ The prosecutor did not purport to have taken a written or recorded statement from N.M. during the *ex parte* interview. RCr 7.26. Thus, the prosecutor's notes were his own work product and, like memoranda prepared by police officers, were not discoverable under RCr 7.24. *Cf. Cavender v. Miller,* 984 S.W.2d 848, 849 (Ky.1998) (handwritten notes made by investigating officer during interview with defendant not discoverable).

*D. Alleged unsworn statements.*

■ During his cross-examination of N.M., the prosecutor brandished what were purported to be notes that he had taken during the *ex parte* interview, intimating that they reflected N.M.'s prior inconsistent statements. Appellant asserts that the prosecutor used these notes to introduce N.M.'s unsworn statements at trial. Of course, if the notes did reflect any prior inconsistent statements of N.M., those statements were a proper subject of cross-examination and admissible not only for impeachment but also for substantive purposes. KRE 801A(a)(1); *Jett v. Commonwealth,* 436 S.W.2d 788, 792 (Ky.1969). The prosecutor did not read any purported prior inconsistent statements contained in his notes but only asked N.M. whether he had made any such statements. N.M. denied having made any statements inconsistent with his trial testimony. When asked by the prosecutor whether N.M. had previously stated that he went into the bathroom and nobody was there, N.M. responded that he had not made that statement and had not been asked that question. The Commonwealth offered no extrinsic evidence to prove otherwise. (At trial, N.M. testified that when he went into the bathroom, someone was in the shower and another witness, J.R., was getting dressed. He also testified that on another occasion, he saw A.W. leave the bathroom and then saw Appellant leave the same bathroom fifteen to twenty minutes later.) We perceive no error in this attempted impeachment of N.M.

Accordingly, Appellant's conviction of unlawful transaction with a minor in the third degree and the sentences imposed therefor are VACATED, and his conviction

of unlawful transaction with a minor in the first degree and the sentence imposed therefor are AFFIRMED.

LAMBERT, C.J.; GRAVES, KELLER, SCOTT, and WINTERSHEIMER, JJ., concur.

JOHNSTONE, J., dissents by separate opinion.

JOHNSTONE, Justice, dissenting.

I respectfully dissent because the majority's construction of KRS 530.064 violates two fundamental constitutional principles: (1) a criminal defendant's right to sufficient notice of the charges against him or her, and (2) the requirement that the government must prove every element of the offense charged. These violations require reversal of this case. Besides these constitutional violations, an additional reversible error occurred when the Commonwealth's Attorney used an unauthorized, extrajudicial subpoena to compel trial witnesses to give pre-trial statements.

## I. Notice of Charges

On August 30, 2001, Hillard was indicted for the offenses of use of a minor in a sexual performance, unlawful transaction with a minor in the first degree, and three counts of unlawful transaction with a minor in the third degree. Later, he was convicted and sentenced. He appealed and the majority has reached a decision herein. But it is this decision—not the indictment, not the proof at trial, and not the jury instructions—that gives Hillard his first notice of the specific charges for which he now stands convicted. This is the untenable result reached by the majority today.

Hillard was convicted of first-degree unlawful transaction with a minor in connection with paying A.W. to "fist" him. KRS 530.064, which sets forth the elements of unlawful transaction with a minor in the first degree, provides in relevant part that "[a] person is guilty of unlawful transaction with a minor in the first degree when he knowingly induces, assists, or causes a minor to engage in illegal sexual activity . . . ." As used in the statute, "illegal sexual activity" refers to sexual activity prohibited elsewhere in the penal code. *Young v. Commonwealth*, 968 S.W.2d 670 (Ky. 1998). Hillard's indictment failed to specify which statutorily prohibited sexual activity he was accused of inducing A.W. to engage in. Failure to specify the underlying illegal sexual offense renders the indictment and the conviction upon which it is based constitutionally infirm. This infirmity is evidenced by the arguments on appeal and the majority's rejection of such.

Hillard contends that the jury's findings do not support the conclusion that he committed any sexual act prohibited by statute. The Commonwealth responds that the underlying illegal sexual offense was prostitution. The majority disagrees with both parties. While it concludes that the definition of prostitution does not fit, the majority does not reverse Hillard's conviction. Rather, the majority formulates its own theory of the case and retroactively applies this new theory to a trial that ended long ago. After carefully sifting through the evidence adduced at trial, the majority concludes that the evidence supports a finding that Hillard was guilty of third-degree sexual abuse. Of course, Hillard was never charged with the underlying offense of third-degree sexual abuse. And, the elements of third-degree sexual abuse were never submitted to the jury. Nonetheless, since the definition fits, the majority concludes that Hillard's conviction for unlawful transaction with a minor in the first degree was supported by the evidence at trial.

The absurdity of the majority's analysis can be further illustrated by a very slight alteration. Suppose the General Assembly enacted a statute that made "engaging in illegal sexual activity" a felony offense. Further, suppose the Commonwealth indicted someone for violation of this statute. After indictment, a trial was had, evidence adduced, a conviction obtained, a sentence rendered, and a subsequent appeal taken. In accordance with today's opinion, our task on appeal would be to look at the evidence adduced at trial, and then determine whether the jury's factual findings fit all of the elements of any sexual act banned by the statute. For all intents and purposes, the majority opinion does just that. This is justice in reverse. And it's a serious violation of Hillard's constitutional rights.

Hillard had the basic and fundamental constitutional right to be given notice of the specific charges against him *before* he was put on trial. *See, e.g., Cole v. Arkansas,* 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948); *Malone v. Commonwealth,* 30 S.W.3d 180, 183 (Ky.2000). Giving him notice only now is truly sentence first, verdict second. His conviction must be reversed.

## II. Proof of Every Element of the Offense

The theory that Hillard's conviction for unlawful transaction with a minor in the first degree is based on the underlying offense of third-degree sexual abuse did not exist until the majority opinion was drafted. While this new theory might conform to the evidence, it does not conform to the jury instructions. Apart from the lack of notice, this requires reversal of Hillard's conviction.

In a criminal case, the government must prove every element of the offense charged beyond a reasonable doubt. *In re*

*Winship,* 397 U.S. 358, 361, 90 S.Ct. 1068, 1070–71, 25 L.Ed.2d 368 (1970); *Commonwealth v. Collins,* 821 S.W.2d 488, 490 (Ky.1991). The jury instruction for unlawful transaction with a minor in the first degree violated this fundamental principle because it did not require the jury to find every element of the underlying illegal sexual offense. And, of course, we discovered for the first time in the majority's opinion that the underlying offense is third-degree sexual abuse.

There are only two elements to third-degree sexual abuse: (1) subjecting another person to sexual contact (2) without the latter's consent. KRS 510.130. The instructions given at trial allowed the jury to find that Hillard was guilty of unlawful transaction with a minor in the first degree if it found that Hillard "knowingly induced, assisted, or caused [A.W.] to place [A.W.'s] hand in the anus of Kevin Hillard." Obviously, because A.W. was a minor, the consent element is not applicable. However, notably absent from the instruction was also any requirement that the jury had to find that Hillard subjected A.W. to "sexual contact."

"Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party." KRS 510.010(7). Nothing in the jury instructions required the jury to find that Hillard's purpose for inducing A.W. to "fist" him was to gratify his or A.W.'s sexual desire. Rather, the trial court's instructions simply presumed that this was so. In other words, the trial court directed the jury to find against Hillard on one element of the offense. This was clear error.

Like the majority, I have "no difficulty concluding that A.W.'s 'fisting' of Appellant was 'sexual contact.'" But unlike the majority, I believe that this was an issue

for the jury to decide, not this Court or the trial court. As we recently stated, "[i]t is *never* proper for a trial court to direct a verdict of guilty where there is a plea of not guilty, despite the fact that the evidence of his guilt may be convincing and wholly uncontradicted." *See Taylor v. Commonwealth*, 125 S.W.3d 216, 219 (Ky. 2003) (emphasis added). Of course, there is a simple explanation as to why the instructions did not require the jury to find that "fisting" constituted "sexual contact." This theory of the case did not exist until today. Thus, the trial court certainly could not have known to include the element of sexual contact in the instructions.

Hillard admittedly did not preserve the error by objecting to the instructions. But, in his defense, the error did not exist at the time. Rather, it came into being with the majority's retroactive theory of the case. As such, I simply cannot fault the defense for failing to object to an error that did not yet exist.

## III. Abuse of Subpoena Power

The majority concedes that the prosecutor unlawfully subpoenaed two teenage witnesses to his office and unlawfully compelled them to give him a statement under the threat of perjury. But the majority deftly changes the issue from the Commonwealth's violation of the law to one of trial error. This slight of hand permits the majority to characterize the Commonwealth's blatant violation of the law as unpreserved error.

The prosecutor's abuse of power first came to light at trial during the following exchange during the Commonwealth's Attorney's cross-examination of N.M., who was a defense witness:

CA: Can you tell the jury whether or not you have ever spoken to me before?

N.M.: Um huh.

CA: And when I spoke to you, I let you know that anything you said was pretty serious. I mean this is a serious matter.

N.M.: Right.

CA: And I actually subpoenaed you to come to my office?

N.M.: Right, you brought me a subpoena at Dairy Queen.

CA.: And I also brought out there a subpoena for [J.S.], is that correct?

N.M.: Correct.

C.A.: Now, you showed up at my office?

N.M.: Correct.

C.A.: And I let you know right off the bat how serious a charge this man is facing, and I read you the definition of perjury?

N.M.: Right, every time ... before I spoke, you brought that up.

C.A.: So, that's a yes or is that a—

N.M.: Right.

C.A.: So, I wanted you to know that this was serious?

N.M.: Right.

C.A.: Now—

N.M.: But ... I don't feel that you wanted me to know it was serious. I feel [that] you were trying to intimidate me—

C.A.: O.K.

N.M.: —into saying what you thought was true.

C.A.: O.K., that's your feeling and you're entitled to that. Now, do you recall talking to me in that office with [J.S.]?

N.M.: Um huh.

C.A.: And you noticed at that time I made a lot of notes? Do you remember me making a bunch of notes? In fact, I made them with a blue-colored pen—

When the prosecutor referenced the notes, defense counsel objected on the grounds it had not been provided these notes. The majority opinion chides defense counsel for not asking the trial court for appropriate relief to cure the error. But it is erroneous to characterize what happened as trial error that required an objection to be preserved for appellate review. There was a violation of the law and the controlling criminal rules that occurred *before* trial. The defense should not be punished simply because these violations first came to light *during* trial.

I would agree with the majority *if* the defense had learned of the Commonwealth's Attorney's unlawful actions prior to trial. In such instance, the defense would have had time to formulate a strategy and determine what relief was available. And in such a scenario, the defense fairly could be held accountable for failing to take appropriate action. But I cannot reward the Commonwealth, as the majority does herein, for successfully concealing its unlawful acts until trial. These are not mere technical violations of complicated rules. Rather, the Commonwealth's unlawful acts remove any "justice" from the criminal justice system.

Relying on the color of his office, the Commonwealth's Attorney used unlawful subpoenas to compel two witnesses to come to his office. Neither Hillard nor defense counsel was given notice of the subpoenas. So, of course, neither was present when the witnesses were compelled to give their statements. Once the witnesses were in his office, the Commonwealth's Attorney further abused his office by falsely threatening the teenage witnesses with perjury.[1] One of the teenagers testified that he felt intimidated and coerced by the Commonwealth's Attorney's unchecked and unrecorded show of force. While the Commonwealth has the authority to fully investigate its cases, it cannot compel a witness in a criminal case to make an extrajudicial, pre-trial statement without the presence of defense counsel or the defendant. The potential for abuse, *e.g.*, witness intimidation, denial of the defendant's constitutional rights, etc., is just too great.

The majority flippantly implies that these violations do not warrant reversal because the Commonwealth could have obtained the same information through voluntary interviews. I believe, however, that what the Commonwealth *could* have obtained through *proper* methods of discovery is entirely irrelevant. The end does not justify the means.

The only authorized, lawful means for securing a prospective witness's statement before a criminal trial is by deposition, and then, only upon a showing of the witness's unavailability at trial. RCr 7.10. When taking depositions, "[t]he order authorizing the taking of a deposition shall contain such specification as will fully protect the rights of personal confrontation and cross-examination of the witness by the defendant." RCr 7.12. The methods used by the Commonwealth's Attorney in this case ran completely roughshod over the important constitutional rights zealously protected by RCr 7.12. As a direct result of the Commonwealth's violations of the law, Hil-

---

1. The elements of perjury could not be met in connection with the witnesses' oral statements made in the Commonwealth's Attorney's office. The elements of first-degree perjury were not present because the statements were not made in an official proceeding. KRS 523.020. The elements of second-degree perjury were not present because the statements were not made in a "subscribed instrument." KRS 523.030. Additionally, even the elements of false swearing were not present because the statements were not made under oath or required by law. KRS 523.040.

lard was deprived of the most basic and rudimentary protections of due process of law.

"As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it, we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. People of State of California*, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941). The Commonwealth's Attorney in this case acted outside of the law and beyond the powers of his office in direct contravention of his sworn duty to enforce and to uphold the law. This gross distortion of the judicial process is utterly incompatible with basic notions of fairness and justice. And no matter what the majority calls it, it stinks. To paraphrase Gertrude Stein, "a skunk is a skunk is a skunk."

While the usually able members of the majority may be able to hold their collective noses to affirm this case, I cannot. Therefore, I dissent.