Jeffrey L. HALE, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2011–SC–000115–DG.

Supreme Court of Kentucky.

April 25, 2013.

William G. Deatherage, Jr. Mark Alexander Gilbert, Deatherage, Myers & Lackey, PLLC, Hopkinsville, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, John Paul Varo, Michael John Marsch, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Jeffery Hale was convicted by the Christian Circuit Court of first-degree unlawful transaction with a minor, as prohibited by Kentucky Revised Statute (KRS) 530.064(1) and sentenced to ten years in

prison. Hale, who was forty-four years old at the time of the alleged offense, was charged with and found guilty of inducing the fourteen-year-old daughter of a recently deceased family friend to have sexual intercourse with him. Hale insists that KRS 530.064, which under the facts of this case constitutes a Class B felony, does not apply unless the perpetrator induces the minor to commit a crime. According to Hale, because the minor involved here was induced to *submit* to a crime but not to *commit* one, he was entitled to a directed verdict on the KRS 530.064 charge and should have been prosecuted at most for third-degree rape, a Class D felony. With one member concurring only in the result, the Court of Appeals panel agreed with Hale's reading of KRS 530.064, but affirmed his conviction because it deemed itself bound by *Young v. Commonwealth*, 968 S.W.2d 670 (Ky.1998), *overruled on other grounds by Matthews v. Commonwealth*, 163 S.W.3d 11 (Ky.2005), in which this Court rejected a claim similar but not identical to Hale's. We granted Hale's motion for discretionary review to look again at KRS 530.064 and *Young*, and again we conclude that the statute was properly invoked and applied to this factual scenario.

## RELEVANT FACTS

Although Hale and the victim gave differing accounts of the details of their encounter, there is no dispute that the encounter took place. According to the Commonwealth's proof, which included the young girl's testimony and the tape-recorded statement Hale gave to the investigating detective, Hale's wife's son, Hale's step-son, was married to the victim's sister. In late 2007 or early 2008, it appears, the step-son's father-in-law, who was the victim's father and a local farmer, was diagnosed with cancer. As the father-in-law became increasingly disabled by his disease, Hale and his wife, who at the time owned and operated a farm outside of Hopkinsville, increasingly lent assistance to the ill man's family. They helped with the farm work and with work around the house and gradually came to be considered family members. During that time, Hale and the victim developed a close friendship. Hale came to have daily phone conversations with her, often took walks with her after shared family meals, and assisted her with a Future Farmers of America project. After the girl's father died, in late September 2008, the relationship intensified. At some point, Hale and the victim began to exchange secret notes and to say that they loved each other. According to the girl's testimony, Hale was the initiator of those practices. Their after-dinner conversations began to include references to sexual matters. According to the girl's testimony, on October 18, 2008, the girl and several of her family members breakfasted with the Hales at a local restaurant, after which the girl accompanied Hale as he went about the day's farm work. In the course of the day their conversation assumed a new level of intimacy, with Hale eventually asking whether the girl was a virgin. At the end of the day, they returned to Hale's home, where the intimate conversation continued, and where finally Hale led the girl to his bedroom, helped her to undress, and had intercourse with her.

The closeness of Hale's relationship with the victim apparently aroused suspicions. In early December 2008, the Christian County Child Protective Services office received an anonymous tip that something might be amiss. A social worker interviewed the girl at school, and when the girl admitted having had sex with Hale, the social worker notified the police. On December 8, 2008 police officers arrested Hale at his home, and the detective as-

signed to the case interviewed him. Hale admitted the one incident, which had not been repeated, and characterized it as a mistake. He was indicted in February 2009 on one count of unlawful transaction with a minor. At the conclusion of his September 2009 trial, the jury, instructed as to both third-degree rape and unlawful transaction with a minor, found Hale guilty of the more serious offense and sentenced him to ten years' imprisonment, the minimum punishment for a Class B felony. At trial, on appeal to the Court of Appeals, and now again before this Court, Hale has maintained that he was entitled to a directed verdict on the unlawful transaction with a minor charge because, in his view, that charge is appropriate only if the perpetrator has induced the minor to commit a crime, not, as here, to submit to unlawful sexual contact. We begin our analysis with this issue and then address Hale's allegation of prosecutorial misconduct.

## ANALYSIS

### I KRS 530.064 Does Not Require That The Minor Be Induced to Commit a Crime.

█ At the time of Hale's alleged offense, KRS 530.064 provided in pertinent part as follows:

(1) A person is guilty of unlawful transaction with a minor in the first degree when he or she knowingly induces, assists, or causes a minor to engage in:

(a) Illegal sexual activity; or

(b) Illegal controlled substances activity other than activity involving marijuana, synthetic drugs, or salvia, as defined in KRS 218A.010;

Except those offenses involving minors in KRS Chapter 531 [pornography] and in KRS 529.100 [human traf-

ficking] where that offense involves commercial sexual activity.

(2) Unlawful transaction with a minor in the first degree is a:

\* \* \*

(b) Class B felony if the minor so used is less than sixteen (16) years old at the time the minor engages in the prohibited activity.

KRS 530.064 (2007). This Court addressed earlier but for present purposes identical versions of this statute in *Young v. Commonwealth*, 968 S.W.2d at 670, in *Hillard v. Commonwealth*, 158 S.W.3d 758 (Ky.2005), and in *Combs v. Commonwealth*, 198 S.W.3d 574 (Ky.2006). In *Young*, we upheld a conviction of two counts of attempted unlawful transaction with a minor (UTM), where the defendant had solicited sex from one eleven-year-old boy and had tried to induce another eleven-year-old boy and his ten-year-old brother to engage in sexual conduct with each other. In *Hillard*, we upheld a first-degree UTM conviction where the twenty-nine year-old defendant had induced the fifteen-year-old victim to manually penetrate his, the defendant's, anus. And in *Combs*, we reversed a first-degree UTM conviction where the defendant had fondled an eight-year-old girl and had tried unsuccessfully to have her touch his penis, because there was no evidence of an inducement, *i.e.*, of a successful persuasion. Rather, the evidence in *Combs* was that the defendant had imposed the sexual activity on an unwilling child.

In all of these cases we presumed that for UTM purposes a minor "engages in illegal sexual activity" if he or she willingly participates in sexual activity that is illegal only because the minor is not old enough to consent to it. Although the precise issue does not seem to have been raised, even sexual activity between willing minors both under the age of twelve, we

explained in *Young*, would be illegal activity, notwithstanding the fact that neither child could be subjected to prosecution, because "any sexual activity with a child less than twelve years of age is illegal, regardless of the age of the perpetrator." 968 S.W.2d at 672. We have thus, presumptively at least, rejected Hale's contention that for UTM purposes a minor "engages in illegal sexual activity" only if the activity would subject the minor himself or herself to prosecution. Hale maintains that our presumptive reading of the statute leads to absurd results and urges us to reconsider it. Although raised in the context of a directed verdict motion, Hale's contention involves primarily a question of statutory interpretation, and thus our review is *de novo. Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609 (Ky.2004).

 As the parties correctly note, our goal when interpreting a statute is to discern and to give effect to the intent of the General Assembly.

> We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration.... We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes.... We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one.... Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history or the canons of construction....

*Maynes v. Commonwealth*, 361 S.W.3d 922, 924 (Ky.2012) (citations omitted). Here, as noted above, KRS 530.064, the first-degree UTM statute, makes it a felony for any person to "knowingly induce[ ], assist[ ], or cause[ ] a minor to engage in ... [i]llegal sexual activity." Other statutes, of course, also criminalize sexual activity with minors. KRS 510.060(1)(b), the third-degree rape statute, makes it a Class D felony for a person at least twenty-one years old to "engage[ ] in sexual intercourse with another person less than sixteen (16) years old." KRS 510.130, the third-degree sexual abuse statute, among other things, makes it a Class B misdemeanor for a person at least eighteen years old to "subject[ ] another person to sexual contact without the latter's consent," including instances where the other person's lack of consent "was due solely to incapacity to consent" by reason of minority. Hale argues that, unlike the sex acts outlawed by these latter two statutes, the "illegal sexual activity" proscribed by the UTM statute does not mean, as in this case, sexual activity perpetrated against the minor and to which the minor merely submits, but rather to sexual activity perpetrated by the minor, activity that is illegal for the minor to commit and for which the minor himself or herself could be sanctioned. Otherwise, Hale maintains, the overlap between the UTM statute and the Chapter 510 statutes leads to the anomalous possibility that conduct amounting to a misdemeanor under Chapter 510 (third-degree sex abuse, say, KRS 510.130, or sexual misconduct, KRS 510.140) could be punished as a Class B felony under the UTM statute, or, as in this case, that conduct that could be regarded as third-degree rape, a Class D felony under KRS 510.060, could be punished as a UTM Class B felony. Hale's claim is not implausible and has some appeal, so to address it we must consider briefly how the UTM statute came to be as it now is.

As originally enacted in 1974, as part of the then-new Kentucky Penal Code, KRS 530.070, Unlawful Transaction With a Minor, combined general and particular aspects of pre-Code statutes meant to protect the welfare of minors. In its entirety KRS 530.070 (1975) provided as follows:

(1) A person is guilty of unlawful transaction with a minor when:

 (a) Acting other than as a retail licensee, he knowingly sells, gives, purchases or procures alcoholic or malt beverage in any form to or for a minor. The defendant may prove in exculpation that the sale was induced by the use of false, fraudulent, or altered identification papers or other documents and that the appearance and character of the purchaser were such that his age could not have been ascertained by any other means and that the purchaser's appearance and character indicated strongly that he was of legal age to purchase alcoholic beverages. This subsection does not apply to a parent or guardian of the minor; or

 (b) He knowingly induces, assists or causes a minor to engage in illegal sexual activity, illegal controlled substances activity, illegal gambling activity or any other criminal activity; or

 (c) He knowingly induces, assists, or causes a minor to become a habitual truant; or

 (d) He persistently and knowingly induces, assists or causes a minor to disobey his parent or guardian.

(2) Unlawful transaction with a minor is a Class A misdemeanor.

According to the drafters' Commentary to this section, KRS 530.070

combines the "contributing [to the delinquency of a minor]" concept of present KRS 208.020 as it applies to non-parents and the specific prohibitions concerning alcohol and tobacco set forth in KRS 244.080 and KRS 438.030. However, [KRS 530.070] broadens these specific prohibitions to include criminal activity, habitual truancy and parental disobedience. The specific prohibitions contained in [KRS 530.070] are designed to replace the vague, troublesome "contributing to the delinquency, dependency or neglect of a child" language of the present law while continuing to protect the physical, mental and moral welfare of children.

*Kentucky Penal Code, Final Draft* pp. 333–34 (November 1971).[1]

KRS 208.020, the statute from which KRS 530.070 derived and which the latter statute was meant to broaden and to clarify, provided in pertinent part that

no person shall:

 (a) Knowingly encourage, aid, cause or in any manner contribute to the conditions which cause, or to cause a child who has not reached his eighteenth birthday to become delinquent, neglected, dependent, needy or charged with a crime; or

 (b) Willfully fail to do any act that will directly tend to prevent a child who has not reached his eighteenth birthday becoming delinquent, neglected, dependent, needy, abandoned or charged with a crime.

Clearly, while encouraging a minor to commit a crime was proscribed by this statute,

---

1. KRS 500.100 provides that the Commentary "may be used as an aid" in construing the Penal Code's provisions.

the statute's proscriptions went further and could reasonably be thought to include, as a contribution to delinquency, encouraging or inducing a minor to engage in underage sex.

The statute was construed exactly that way in *Willock v. Commonwealth,* 435 S.W.2d 771 (Ky.1968), wherein the Court upheld the conviction of an eighteen-year-old male who was found guilty of contributing to the delinquency of a fourteen-year-old female by causing her to stay away from her home and by having sexual relations with her. Such acts, the Court stated, were "calculated to cause delinquency." 435 S.W.2d at 772. Similarly, in *McDonald v. Commonwealth,* 331 S.W.2d 716 (Ky.1960), the court upheld the conviction of an adult male found guilty of having sexually molested a ten-year-old girl. "If permitted to continue," the Court said, "it [the defendant's conduct] might well have resulted in this child's becoming a delinquent." 331 S.W.2d at 717 (construing KRS 199.320, the very similar predecessor of KRS 208.020). Since, according to the Commentary, KRS 530.070 was intended to incorporate this prior law, the statute's proscription against inducing a minor "to engage in illegal sexual conduct" is best understood as the Court has long presumed, *i.e.,* as outlawing not only inducements to commit a crime, but inducements as well to participate in sexual conduct illegal as a result of the minor's inability to consent.

Sister States with similar laws have reached the same result. *See, e.g., State v. Rojas–Marceleno,* 295 Kan. 525, 285 P.3d 361 (2012) (noting that Kansas statute outlawing the indecent solicitation of a child is violated when the child is enticed or solicited to commit or to submit to an unlawful sexual act); *State v. Laporte,* 157 N.H. 229, 950 A.2d 147 (2008) (noting that endangering the welfare of a child by solicit-ing sexual conduct does not require that the perpetrator intend for the child to commit a crime); *Commonwealth v. Decker,* 698 A.2d 99 (Pa.Super.1997) (noting that adult's conviction for corruption of a minor does not require that the minor commit a crime); *Senf v. State,* 622 So.2d 435 (Ala.Crim.App.1993) (noting that adult's conviction does not require that the minor commit a delinquent act); *State v. Trevino,* 116 N.M. 528, 865 P.2d 1172 (1993) (noting that although minor commits no offense, sexual contact with minor can be corrupting); *Sullivan v. State,* 766 P.2d 51 (Alaska App.1988) (noting that although the minor commits no offense, inducing the minor to submit to an offense contributes to delinquency). *See generally,* J.A. Bock, *Criminal Liability For Contributing to Delinquency of Minor as Affected by the Fact that Minor has not Become a Delinquent* 18 A.L.R.3d 824 (1968, updated weekly) (noting majority rule that minor need not commit a delinquent act). Under federal law as well, solicitations by means of the mail or the facilities of interstate or foreign commerce of persons under eighteen for "sexual activity for which any person [not necessarily the minor] can be charged with a criminal offense" have been outlawed. 18 U.S.C.A. § 2422 (2006) (providing for a sentencing range of from ten years to life imprisonment).

Our understanding of the General Assembly's intent is not altered, as Hale would have it, by the broad overlap among the first-degree UTM statute and some of the Chapter 510 statutes, nor by the wide range of potential penalties these various statutes make possible. As noted above, initially UTM was an offense of a single degree and was punished solely as a Class A misdemeanor. In 1984, in response to widespread and increasing concerns about the prevalence and harmfulness of child pornography, child prostitution, and child

sexual abuse, the General Assembly enacted H.B. 486, "an ACT relating to sexually abused, missing and exploited children, including those persons who commit offenses relating thereto." *See* Armstrong and Gillig, *Responding to Child Sexual Abuse and Exploitation: The Kentucky Approach,* 16 N. Ky. L.Rev. 17 (1988–89) (discussing legislation in the mid–1980s meant, among other things, to increase the reporting and prosecution of sex crimes against children). Among many other changes, H.B. 486 divided the UTM statute into an offense of two degrees. What had been subsection (*l*)(b) of the original statute—"A person is guilty of unlawful transaction with a minor when … he knowingly induces, assists or causes a minor to engage in illegal sexual activity, illegal controlled substances activity, illegal gambling activity or any other criminal activity constituting a felony"—was moved to its own section—KRS 530.065—and was made a first-degree offense punishable as a Class D felony. Carved out from the new section were offenses involving child pornography and child prostitution, which were addressed in new statutory sections of their own—KRS Chapter 531 and KRS 529.040(*l*)(b) respectively. The rest of the original KRS 530.070 became UTM in the second degree and remained punishable as a Class A misdemeanor.

In 1986, the General Assembly went yet a step further. With H.B. 238, "an ACT relating to child abuse," the two-year-old KRS 530.065 was itself subdivided into offenses of two degrees. Inducing a minor to engage in illegal sexual activities became the new first-degree offense (KRS 530.064) punishable as a Class A, B, or C felony depending on the age of the minor and on whether physical injury had been inflicted. Inducing a minor to engage in

other illegal activities became UTM in the second degree, punishable as a Class D felony (KRS 530.065 [2]); other forms of UTM were designated third-degree offenses still punishable as Class A misdemeanors (KRS 530.070). This division into three degrees remains the structure of the UTM offenses today.

As the legislation leading to that structure shows, aside from the removal of activities involving pornography and certain activities involving prostitution, the division of the UTM offenses into offenses of different degrees did not alter the substantive definition of those offenses. What was an unlawful transaction with a minor in 1974, such as inducing a minor to engage in underage sex, remains a UTM offense. What changed, however, was the seriousness with which the General Assembly came to regard certain of those offenses, and particularly offenses whereby minors are induced to participate in illegal sexual activities, inducements which the General Assembly has indicated it regards as a form of child abuse. We reject, therefore, Hale's contention that KRS 530.064 is limited to instances in which the minor has been induced to commit a crime.

As for Hale's concern that conduct punishable as a misdemeanor under KRS 510.130 (third-degree sexual abuse) or KRS 510.140 (sexual misconduct) or as a Class D felony under KRS 510.060 (third-degree rape) might also be punishable under KRS 530.064 (first-degree UTM) as a Class B felony, we are persuaded that the broad statutory alternatives bespeak not the absurdity of the legislative scheme or the absurdity of our interpretation of that scheme, but rather the wide diversity and the complexity of the sexual conduct the statutes are meant to regulate. In few other areas of our lives, after all, can acts

---

**2.** Inducing a minor to engage in certain illegal controlled substance activities has since been moved to KRS 530.064 and made a first-degree offense.

superficially alike have, depending on the circumstances, such vastly different causes, meanings, and consequences. As Hale's examples to this Court show, with respect merely to the facial elements of the offenses, the forcible rape of a two-year-old could be charged as a Class A felony first-degree rape or as a Class B misdemeanor third-degree sexual abuse. An eighteen-year-old high school student's talking his fifteen-year-old girlfriend into intercourse, on the other hand, could be charged as misdemeanor misconduct or as a Class B felony UTM. Between a latter day Romeo and Juliet on the one hand, and the most egregious offenses, on the other, there is an infinite variety of sexual deeds and misdeeds. The General Assembly has recognized that complexity by defining several sex offenses broadly and by allowing some degree of overlap among them. Where conduct implicates more than one offense, fitting the charge (if any) to the conduct is a matter of prosecutorial and grand jury discretion. *Flynt v. Commonwealth*, 105 S.W.3d 415 (Ky.2003); *Young v. Commonwealth*, 968 S.W.2d at 670. *See also United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (holding that choice between overlapping crimes with different penalties is matter of prosecutorial discretion). The fact that the various sex-offense statutes, including KRS 530.064, allow for and frequently require the exercise of that discretion does not render the statutes absurd as Hale insists.

In *Young*, of course, as the Court of Appeals correctly observed, we considered a very similar claim and reached the same result. Young argued that to avoid any overlap with the KRS Chapter 510 of-

fenses, KRS 530.064 should be construed as applying only where the minor had been induced to engage in illegal sexual activities with someone other than the inducer. Noting that "our function is not to legislate, but to ascertain the legislative intent," *Young*, 968 S.W.2d at 673, we observed that had the General Assembly intended so strict a limitation on the reach of KRS 530.064 it easily could have and likely would have made the limitation express. Absent such an express limitation, we concluded, "[a]ny possible overlap of this statute with the offenses described in KRS Chapter 510 is but another circumstance where the same act may constitute either of two offenses, permitting the grand jury to elect to indict on either offense." *Id.*

The same reasoning applies here. Had the General Assembly intended to depart from the earlier contributing-to-the delinquency-of-a-minor idea (and from the Commentary embracing that idea) and to limit KRS 530.064 to inducements to commit a crime, it could and very likely would have said so, as it has done in the criminal solicitation statute, KRS 506.030.[3] The legislature's choice not to refer specifically to a "crime" by the minor, but to use the much more general expression "engage in illegal sexual activities" persuades us again, as in *Young*, that the narrow reading Hale proposes was not intended and that the overlap with KRS Chapter 510 was intended, the General Assembly deliberately affording grand juries and prosecutors an important option when minors have been induced to engage in sex for which they are too young to consent. *See also Quist v. Commonwealth*, 338 S.W.3d 778 (Ky.App.2010) (rejecting claim that KRS

---

3. "A person is guilty of criminal solicitation when, with the intent of promoting or facilitating the commission of a crime, he commands or encourages another person to engage in specific conduct which would constitute that crime or an attempt to commit that crime or which would establish the other's complicity in its commission or attempted commission." KRS 506.030(1).

530.064 does not apply unless the minor is induced to commit a crime). The trial court, in sum, did not err when it denied Hale's motions for a directed verdict.[4] Moreover, the third-degree rape statute which Hale contends was more fitting was instructed upon by the trial court. and, despite repeated efforts by the defense counsel to convince jurors it was the only appropriate charge, the jury found the more serious offense of unlawful transaction with a minor.

## II Hale's Conviction Was Not Tainted By Prosecutorial Misconduct.

Hale next contends that even if he was not entitled to the dismissal of the UTM charge, his conviction should be reversed because of prosecutorial misconduct. He complains in particular that during closing argument the prosecutor referred to the fact that the not quite fifteen-year-old victim was a virgin at the time of her encounter with Hale, referred to Hale's defense as "offensive," used a child's storybook that had been read during opening statement as a prop,[5] and urged the jurors in reaching their verdict to consult their hearts as well as their heads.[6] All of this was improper, Hale maintains, and deprived him of a fair trial. We disagree.

■ Hale acknowledges that he made no objection during the prosecutor's closing, and he correctly observes that an unobjected-to prosecutorial error will be deemed reversible only if it was "flagrant" or "palpable." *Hannah v. Commonwealth,* 306 S.W.3d 509 (Ky.2010) (discussing the test for flagrancy); *Brewer v. Commonwealth,* 206 S.W.3d 343 (Ky.2006) (discussing the test for palpable error). Under either test, the defendant will be entitled to relief only if the prosecutor's misconduct rendered the trial fundamentally unfair. *Childers v. Commonwealth,* 332 S.W.3d 64 (Ky.2010). Because we are convinced that the prosecutor's error in this case, if any, was not flagrant or palpable, we must reject Hale's claim for relief.

To see why, it is necessary to consider Hale's defense. As noted above, Hale conceded that he had engaged in illegal intercourse with the victim, so his defense focused not on whether he was guilty but rather on which offense his guilt and punishment should be based. Hale maintained that because a relative of the victim was a prominent member of the local criminal justice system, he was being vindictively and inappropriately prosecuted for

---

**4.** Hale also invokes the rule of lenity, according to which otherwise irresoluble ambiguities in penal statutes are to be decided in favor of the defendant. *White v. Commonwealth,* 178 S.W.3d 470 (Ky.2005). Since the alleged ambiguity here disappears upon consideration of KRS 530.064's legislative evolution, the rule of lenity does not apply.

**5.** Hale maintains that the book was used by the prosecutor to emphasize "innocence" and was an attempt to create sympathy for the victim and "her alleged lost virginity and innocence." The record does not reflect that the storybook was used as a prop but even if it were used, it would not constitute flagrant misconduct.

**6.** Hale also asserts that evidence of the victim's virginity was irrelevant and so should

not have been admitted. During Hale's interview with the detective, however, Hale initially claimed that his intercourse with the victim took place in a barn, but later in the interview he admitted that it took place in his bedroom. The fact that the victim had been a virgin and may have bled on the sheets had some bearing on Hale's decision to abandon the barn fabrication, and so arguably the victim's virginity was relevant to Hale's credibility. Be that as it may, Hale concedes that he did not object to any of the several references during trial to the victim's virginity—he referred to it himself, in fact, during his own testimony—and he does not contend even now on appeal that those references amounted to a palpable error.

UTM, a class B felony, when the more appropriate charge was the Class D felony, third-degree rape. During his closing, as part of his argument in favor of the lesser offense, Hale emphasized that the victim—"according to nature," Hale argued, "a woman"—had willingly engaged in the intercourse; he asserted that she had not been injured, but had gone on with her life making good grades in school and having boyfriends; he stated that many females had sexual encounters with older males and suffered no ill effects; and he insisted that his UTM prosecution was vindictive and unfair. In light of all of that, he urged the jury to consider the case with their heads, not their hearts.

In response, the prosecutor characterized Hale's minimizing of the offense and his attempting to shift responsibility to the victim as "offensive."[7] In arguing that the victim had been injured, he four times referred to the fact, well-supported by the evidence, that she had lost her virginity at a very young age to a man some thirty years her senior. And in the same vein, he urged the jury not to be misled by Hale's "fairness" argument—"This case is not about fairness," he said—but to consider the seriousness of the offense—what it meant for the victim—not just with their heads, but with their hearts as well.

 Although out of context the prosecutor's apparent suggestions that the jury need not be fair or dispassionate could seem highly improper, in context it is clear that that is not what the prosecutor was suggesting and would not have been understood as suggesting, as the lack of objection to his remarks tends to show.

Counsel, of course, are accorded wide latitude during closing argument to comment on the evidence, on the opposing side's tactics, and on the falsity of the opposing side's position. *Stopher v. Commonwealth*, 57 S.W.3d 787, 805–06 (Ky.2001) (citing *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky.1987)). It was not improper, we have held, for a prosecutor to characterize a defense as "stupid," *id.*, or as "a scam." *Slaughter*, 744 S.W.2d at 412. Similarly, it was not improper for the prosecutor here to characterize Hale's "no harm done" defense as "offensive." Further, it is not improper to humanize the victim, short of glorifying or enlarging her. *Ernst v. Commonwealth*, 160 S.W.3d 744 (Ky.2005). And while generally it is improper during the guilt phase of trial to introduce evidence of how a crime impacted the victim so as to arouse sympathy for her, *id.*, a prosecutor "is entitled to ... make a reasonable argument in response to matters brought up by the defendant." *Driver v. Commonwealth*, 361 S.W.3d 877, 889 (Ky.2012) (citation and internal quotation marks omitted). Hale's argument, essentially, that nothing too serious had happened to the victim, invited, we believe, the prosecutor's references to the victim's youth and lost virginity. *Cf. Roach v. Commonwealth*, 313 S.W.3d 101 (Ky.2010) (holding that prosecutor's reading of statute during closing in response to defense arguments about legislative intent was not palpable error).

 It is well established, finally, "that a prosecutor may use his closing argument to attempt to persuade the jurors the matter should not be dealt with lightly."

---

7. Hale maintains that the prosecutor was referring to him personally and to his attorney as "offensive." We do not understand the prosecutor's remarks in that way, but even if Hale were right, the assertion would only have been that Hale was personally offensive to the extent that he would excuse his own conduct and attempt to attribute the incident to the fourteen-year-old victim. This minor difference in interpretation makes no difference to the result.

*Brewer,* 206 S.W.3d at 350 (citation and internal quotation marks omitted). In *Brewer,* we noted that the Commonwealth "had the right to respond [to defense counsel's plea for leniency] by pointing out why it believed Appellant's crimes were serious enough to warrant a high degree of punishment." 206 S.W.3d at 350 (citing *Young v. Commonwealth,* 25 S.W.3d 66 (Ky.2000)). The prosecutor's remarks in this case were well within this precedent. He was allowed to respond to Hale's claim of prosecutorial overreaching by arguing that the UTM charge was not unfair and by stressing the seriousness of a much older man's sexual exploitation of an underage girl. In sum, the prosecutor's closing argument was not flagrantly or palpably erroneous and did not deprive Hale of a fair trial.

### CONCLUSION

Unlawful transaction with a minor pursuant to KRS 530.064 is not limited to instances where the defendant has induced a minor to commit a crime, but applies as well to inducements to engage in sexual activity made illegal by the minor's incapacity to consent to it. Hale was thus not entitled to a dismissal of the charge of unlawful transaction with a minor. Nor is Hale entitled to relief on the ground of prosecutorial misconduct. The prosecutor's closing argument was arguably a fair response to Hale's defense, and was not, in any event, flagrantly improper. Accordingly, we hereby affirm the Opinion of the Court of Appeals.

MINTON, C.J.; KELLER, NOBLE, SCOTT, and VENTERS, JJ., concur.

CUNNINGHAM, J., not sitting.