[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10123
Non-Argument Calendar
_____

D.C. Docket Nos. 1:12-cv-00493-CB; 1:05-cr-00013-CB-C-1

EDGAR SEGURA OCORO,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(April 6, 2015)

Before WILLIAM PRYOR, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

Edgar Segura Ocoro appeals *pro se* the denial of his motion to vacate his sentence of 240 months of imprisonment. 28 U.S.C. § 2255. We issued a certificate of appealability to address two issues: (1) whether Ocoro was entitled to an evidentiary hearing to determine if counsel was ineffective for failing to advise Ocoro "about his options in pleading guilty . . . [and] the consequences of pleading guilty"; and (2) whether counsel was ineffective for failing to object to the enhancement of Ocoro's sentence on the basis it "violated the explicit or implicit assurances given to the Colombian government to secure [his] extradition." We affirm.

## I. BACKGROUND

We divide our discussion in two parts. First, we discuss Ocoro's extradition from Colombia, his change of plea and sentencing proceedings, and his direct appeal. Second, we discuss Ocoro's motion to vacate his sentence.

*A. Ocoro's Extradition, Guilty Plea Proceedings, and Direct Appeal*

In 2005, a federal grand jury charged Ocoro with conspiring to possess with intent to distribute more than 50 kilograms of cocaine, 21 U.S.C. § 846, and conspiring to launder money, 18 U.S.C. § 1956(h). Oroco fled to Colombia, but a diplomatic note written by the Embassy of the United States in March 2009 stated that the Colombian government had agreed to extradite Ocoro "pursuant to Resolution No. 533, dated December 24, 2008." The diplomatic note gave

assurances that Ocoro would "not be subject to 'forced disappearance,' torture or cruel or unusual punishment, degrading or inhumane treatment, 'exile,' life imprisonment, 'confiscation without due process of law,' or the imposition of the death penalty." The diplomatic note also stated that Ocoro would not be sentenced to imprisonment for life, although that was the maximum penalty for his offenses. Ocoro had an initial appearance hearing on April 8, 2009.

On June 1, 2009, the United States filed a notice of intent to enhance Ocoro's sentence. *See* 21 U.S.C. § 851. The notice stated that, on December 28, 1987, Ocoro had pleaded guilty in a Texas court to possessing a controlled substance.

On June 26, 2009, Ocoro entered an agreement to plead guilty to both conspiracy charges in exchange for a recommendation from the United States that Ocoro receive a reduction of his sentence for substantial assistance, *see* U.S.S.G. § 5K1.1; Fed. R. Crim. P. 35, or receive a sentence at the low end of his advisory guideline range. The plea agreement stated that Ocoro faced a mandatory minimum sentence of 20 years of imprisonment for conspiring to distribute cocaine and a maximum penalty of 20 years of imprisonment for conspiring to launder money and that Ocoro was waiving his right to challenge his sentence, subject to certain exceptions. The agreement also stated that Ocoro "had the benefit of legal counsel [during] negotiat[ions]"; he had conferred with counsel about "possible

3

defenses to the charges" and was "completely satisfied with the legal advice"; his "plea[s] of guilty [had been] freely and voluntarily made and [had] not [been] the result of force, threats, promises, or representations apart from those" described in the plea agreement; and he had received "no promises from anyone as to the particular sentence that the Court [might] impose." In the factual resume, Ocoro admitted that he was responsible for "40 kilograms of cocaine."

During his change of plea hearing, Ocoro acknowledged that he was "fully satisfied" with his attorney's services; he "fully underst[ood] the terms and conditions of the plea agreement and the factual resume[] and . . . agree[d] with [them]"; and he had "commit[ted] the acts and [did] the things that [he had] admitted to in" the factual resume. Ocoro also acknowledged that he had not been induced or coerced to plead guilty and that he faced a sentence of 20 years of imprisonment. The prosecutor stated that "the enhanced penalty [for conspiring to distribute cocaine] is 20 years to life without parole" and that she was not requesting the maximum penalty because of the "assurance given to [the country of Colombia]." The district court accepted Ocoro's pleas of guilty.

Ocoro's presentence investigation report provided that he had an adjusted offense level of 35, a criminal history of IV, and an advisory guideline range between 235 and 293 months of imprisonment. The report also provided that Ocoro was subject to a mandatory minimum sentence of 20 years of imprisonment

because of his prior conviction for possessing a controlled substance. *See* 21 U.S.C. § 851. Due to the enhancement, Ocoro faced a sentencing range of 240 to 293 months of imprisonment.

Ocoro objected *pro se* to the enhancement of his sentence. Ocoro argued that he had received "insufficient" notice; his prior conviction was too remote; and it was "unconstitutional" for the prosecutor to exercise unfettered discretion to determine whether to request the enhancement. The prosecutor responded that Ocoro "had knowledge of the enhancement information at the time of his guilty plea . . . pursuant to his plea agreement," which "put[] his statutory minimum mandatory [sentence] at 20 years." Defense counsel stated that he and Ocoro had discussed the mandatory minimum sentence. Defense counsel also stated that he thought the "objections to the presentence report [were] moot based on the enhancement that was filed and [because] . . . Ocoro ha[d] admitted . . . [to the] prior conviction."

At sentencing, the district court overruled Ocoro's objections. Ocoro stated that "there [were] some points regarding the enhancement . . . that [his] attorney [had] not presented," but rather than address those issues, Ocoro said that his attorney was obligated to "present them." The district court considered the statutory sentencing factors, *see* 18 U.S.C. § 3553(a), and sentenced Ocoro to 240 months of imprisonment.

Ocoro appealed, and counsel filed a motion to withdraw from further representation and a brief in support. *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967). We affirmed Ocoro's convictions and sentence.

### B. Ocoro's Motion to Vacate

Ocoro moved to vacate his sentence on three claims of ineffective assistance of counsel. First, Ocoro argued that counsel had represented that the prosecutor would withdraw the motion for enhancement after Ocoro changed his pleas from not guilty to guilty. Second, Ocoro argued that his counsel should have advised him that he could preserve his right to appeal by going to trial or pleading guilty without an agreement and that he could undergo a trial on stipulated facts to preserve any "non-jurisdictional errors." Third, Ocoro argued that counsel should have objected to the enhancement of his sentence on grounds that it violated the doctrine of dual criminality and that the offense had occurred before December 17, 1997. Ocoro asserted that, had he known of the alternatives to entering a plea agreement, he would have insisted on going to trial, having a bench trial on stipulated facts, or entering a blind plea of guilty. Ocoro moved for an evidentiary hearing.

The district court denied Ocoro's motion without an evidentiary hearing. The district court ruled that Ocoro's argument about being misled by counsel about application of the enhancement was contradicted by Ocoro's plea agreement and

his statements during his change of plea hearing. Ocoro was not prejudiced by his counsel's failure to advise him about various methods of resolving his charges, the district court determined, because Ocoro would have faced an increased sentencing range had he gone to trial; Ocoro would have had the same result had he entered a blind plea of guilty; and Ocoro's "assertion that he would have chosen a trial based on stipulated facts [was] . . . illusory" because "a trial of that type requires the agreement of both parties, and there [was] no basis for concluding that the government would have been amenable to such a proceeding." The district court also ruled that an objection to the sentence enhancement would have been "frivolous." Ocoro failed to provide "any legal or factual support[ for his argument] that no Colombian citizen can be extradited for any acts committed before 1997"; he was not extradited for "the prior offense charge"; and his extradition did not violate the doctrine of dual criminality because he offered no argument that "the offenses charged in [his] indictment [were] not serious offenses in Colombia."

## II. STANDARDS OF REVIEW

On denial of a motion to vacate a sentence, we review findings of fact for clear error and the application of law to those facts *de novo*. *Dell v. United States*, 710 F.3d 1267, 1272 (11th Cir. 2013). We review the denial of an evidentiary

7

hearing for abuse of discretion. *Brown v. United States*, 720 F.3d 1316, 1335 n.3 (11th Cir. 2013).

## III. DISCUSSION

Oroco argues that his trial counsel provided deficient representation. Oroco argues that his counsel was ineffective for failing to object to the enhancement on the ground that it violated the assurances provided to the Colombian government. Ocoro also argues that he is entitled to an evidentiary hearing to determine whether his counsel provided inadequate advice about the processes available to resolve his criminal charges. His arguments fail.

We review *de novo* the denial of a claim of ineffective assistance. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). To prevail on that claim, a movant must satisfy a two-part standard. *See Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984). The movant must first prove "that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687, 104 S. Ct. at 2064. If counsel's performance was deficient, the movant must also prove that counsel's error was "so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Id.*

8

The district court did not err by denying Ocoro's claim that counsel made a professional error by failing to object to the enhancement of Ocoro's sentence based on the violation of assurances given to Colombia. The application of the enhancement did not violate the assurances in the diplomatic note that Ocoro would not be mistreated or receive a sentence of life imprisonment. Ocoro argues that the sentence enhancement violates the rule of specialty because it conflicted with an assurance that he would be prosecuted in compliance with Article 35 of the Constitution of Colombia, which requires that the conduct underlying the criminal charge occur before December 17, 1997. But "[t]he rule of specialty applies only to extraditions pursuant to treaty," *United States v. Valencia-Trujillo*, 573 F.3d 1171, 1179 (11th Cir. 2009), and Ocoro fails to cite any treaty between the United States and Colombia under which he was purportedly extradited. According to the diplomatic note, the "Government of Colombia . . . approved [Ocoro's] extradition . . . pursuant to Resolution Number 533, dated December 24, 2008." Ocoro was not extradited under a treaty and lacked standing to assert a violation of the rule of specialty. Because the enhancement of Ocoro's sentence did not violate any assurances given for his extradition, "[t]here was no reason for counsel to object." *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001).

The district court also did not abuse its discretion when it denied Oroco an evidentiary hearing on his claim that his counsel failed to advise him of the

9

methods available to resolve his criminal charges. An evidentiary hearing is unnecessary when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Even if we were to assume that counsel was deficient for failing to inform Ocoro that he could go to trial, plead guilty without the benefit of an agreement, or request a trial based on stipulated facts, Ocoro could not establish "a reasonable probability" that the outcome of his case would have been different. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Oroco does not deny that he conspired to possess with intent to distribute cocaine, *see* 21 U.S.C. § 846, and regardless of the method of his conviction, he would have faced, at a minimum, a sentence of 20 years of imprisonment for having a prior conviction for a drug offense, *id.* §§ 841(b)(1)(A), 851. Oroco argues that he could have preserved his right to appeal had he disposed of his charges by means other than pleading guilty with an agreement, but he does not identify any issue that he would have raised on appeal. And Ocoro fails to recognize that, without his plea agreement, he would likely have received a longer sentence because he would not have received a reduction of his offense level for his acceptance of responsibility, *see* U.S.S.G. 3E1.1, nor would the government have been obligated to recommend that he receive a sentence at the low end of his advisory guideline range. Because the district court could determine from the

10

record that Ocoro was not entitled to postconviction relief, no evidentiary hearing was required to resolve his claim of ineffective assistance.

## IV. CONCLUSION

We **AFFIRM** the denial of Ocoro's motion to vacate.